## SCHMIDLAPP v. COMMISSIONER OF INTERNAL REVENUE.

### No. 213.

Circuit Court of Appeals, Second Circuit.

May 2, 1938.

Perkins, Malone & Washburn, of New York City (Frank B. Washburn and Watson Washburn, both of New York City, of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from an order of the Board of Tax Appeals, assessing added income taxes against the taxpayer for the years 1931 and 1932. The issues relate to deductions of which four are in dispute, and all of which the Board disallowed; to identify them we shall call them, (1) entertainment expenses; (2) apartment rent; (3) loss on Winchester-Simmons shares; (4) loss on Chase Bank shares. As they are quite separate and involve different considerations, we may take them up seriatim.

(1) Entertainment Expenses.

The taxpayer was a vice-president of the Chase National Bank of New York, which expected that as part of his duties he would entertain at his own expense visitors whose favor the bank desired; just as some manufacturers entertain the buyers of mercantile houses to induce their patronage. The taxpayer lived lavishly, and swore that a substantial part of his expenses were incurred to discharge this implied duty; he estimated that his outlay upon such guests amounted to $3,000 in each year. The case comes up only upon the Board's finding and its meaning is equivocal; it was as follows. "The record of such expenditures is very unsatisfactory. With the exception of the item of 'Recess Club Charges' no expenditures were specifically attributable, to entertaining bank customers, and none was adequately .proved." We cannot tell why the proof was inadequate, and possibly should not have agreed that it was, but as the record stands we must take it that only the "Recess Club Charges" were sufficiently proved—$590.75 in 1932. If proved, these outlays were, however, deductible. In Cohan v. Commissioner, 2 Cir., 39 F.2d 540, we held that the expenses of an impresario in entertaining the actors and chorus during the period of rehearsals, was one of the "ordinary and necessary expenses * * *

in carrying on" his business; and we cannot see anything to distinguish the expenses at bar, so far as they really were to drum up business for the bank, though it was proper to be extremely suspicious as to how far that was their purpose. It is no answer to say that they were for the bank's benefit; so were all the taxpayer's services; if it did in fact give him to understand that he was to extend a factitious hospitality in its interest, the cost of it was a necessary expense of his office. The Commissioner does not ask us not to recognize such an arrangement as lawful, and indeed any compunctions as to its propriety lie rather in the field of dignity and good taste, than of morals. To the extent of $590.75 in the year 1932, the deduction should have been allowed.

### (2) Apartment Rent.

■ The taxpayer had leased and occupied an apartment in New York; he abandoned it and moved to another in the spring of 1931. He still had the old lease on his hands, and retained a broker as early as November, 1930, to dispose of it. He was unsuccessful, and deducted the rent reserved for 1931 and 1932, as a loss "incurred in any transaction entered into for profit." Section 23(e) (2), Revenue Acts of 1928 and 1932, 26 U.S.C.A. § 23(e) (2) and note. In Heiner v. Tindle, 276 U.S. 582, 48 S.Ct. 326, 72 L.Ed. 714, the taxpayer, being obliged to move from his home, let it to others; when he sold it, he was allowed to deduct as a loss the difference between its value when lease began and the eventual sales price. As a new matter something may no doubt be said against distinguishing between a house actually let, and one unsuccessfully put upon the market; putting the property in the hands of a broker might perhaps be regarded as itself the inception of a "transaction entered into for profit." But Morgan v. Commissioner, 5 Cir., 76 F. 2d 390, and Rumsey v. Commissioner, 2 Cir., 82 F.2d 158, are the other way; they hold in effect that only an actual letting creates a "transaction", and it is true that only then does it become impossible for the owner to resume his original occupation. DeFord v. Commissioner, 1 Cir., 29 F.2d 532 is not in point on the facts. These deductions were properly denied.

### (3) The Loss on the Winchester-Simmons Shares.

■ The taxpayer had bought some shares in the Winchester-Simmons Company, a holding company whose only assets were 90% of the common shares of the Winchester Repeating Arms Company, and 90% of those of the Associated Simmons Hardware Company. The Winchester-Simmons Co. had itself borrowed $1,000,000 before 1930, and the Winchester Repeating Arms Co. went bankrupt early in 1931, its common shares being entirely worthless thereafter. The Simmons Company went into the hands of receivers in January of 1932, and the taxpayer in December, 1932, sold his Winchester-Simmons shares for one dollar. The question is whether he suffered a "capital loss" in 1932—as he originally asserted, and as it was allowed—or an "ordinary loss", as he now claims. It is true that the Simmons shares are not found to have had no value at all in 1932, but both sides assume that they were not worth $1,000,000. The Winchester-Simmons shares were therefore worthless. "'Capital' loss means deductible loss *resulting* from the sale or exchange of capital assets." Section 101(c) (2) of the Revenue Act of 1932, 26 U.S.C.A. § 101 note. As long as assets have any value whatever, a gain or loss "results" from their sale, their "unrealized" depreciation not being "recognized" until then. Theoretically, that conception might have been extended to property whose value had altogether disappeared, but theory has not been pushed so far. A taxpayer suffers a "recognized" loss, if the property becomes altogether worthless as much as though it were physically destroyed. United States v. S. S. White Dental Mfg. Co., 274 U.S. 298, 47 S.Ct. 598, 71 L.Ed. 1120. Moreover, such a loss may not be reserved and taken in a later year through the device of a sale. De Loss v. Commissioner, 2 Cir., 28 F.2d 803; Dalton v. Bowers, 2 Cir., 56 F.2d 16; St. Louis Union Trust Co. v. United States, 8 Cir., 82 F.2d 61. So the Commissioner argues that, since the Winchester-Simmons shares first became worthless in 1932, the taxpayer had an option in that year either to deduct a "capital net loss" under section 101(b) of Revenue Act 1932, 26 U.S.C.A. § 101 note, or an "ordinary loss" under section 23(e) (2); and that having once elected, he was bound. The existence of such an option depended, however, upon the loss's "resulting" from the sale in 1932; and it did not so result, as we have said, since the shares were already worthless. Therefore, the taxpayer did not have the supposed option and his first return was merely an

error. The deduction should have been allowed.

### (4) The Chase National Bank Shares.

The taxpayer had at various times before 1929 bought a number of shares of stock in the Chase Bank. Some of these he sold in 1929 at a profit which he did not report in his return for that year. His reason for this was that he supposed the proper way to report a gain or loss upon a block of stock bought serially, was to use the proceeds of the first sales to amortize the whole purchase price, and after that had been extinguished, to treat all later proceeds as profit. In 1932 he sold out the rest of his shares, and in his return for that year he followed the same method; that is, he subtracted the proceeds of the sales in 1932 from what was left unamortized of the original purchase price and deducted the balance from his gross income as a loss. The Commissioner for other reasons disallowed the whole of this deduction, but the Board reversed him and reinstated the deduction, though only for the amount claimed. This left a deficiency which the taxpayer cannot expunge, unless, deserting the method which he chose, he is allowed to calculate his loss for 1932, by allocating first purchases to first sales under Art. 58 of Regulations 74. That privilege he asserted in his petition to the Board. Had that method been applied for 1929, it would have resulted in a taxable gain for that year nearly as great as the deduction now claimed. The taxpayer has escaped taxation on that income, and it is now too late to assess any tax for 1929. To avoid this loss of taxes the Commissioner argues that the regulations were not intended to be exclusive, and that in substance the taxpayer had an option to calculate the gain or loss either in the way he did, or as he now wishes to do; but that having once chosen, he may not disavow his choice and altogether avoid a tax which in 1929 he professed only to defer.

It must be owned that there is much justice in this; and the argument would be particularly strong, were the taxpayer seeking to get back what he had paid, since he could then recover only ex aequo et bono. Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265. Yet even then, McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. ——, would stand in the way, since under section 1675(a) of title 26 U.S.Code, 26 U.S.C.A. § 1675(a), section 609(a) of Revenue Act of 1928, the credit of any sums due in the later year would be "void" against an assessment, payment of which would have to be refunded under § 1670(a) (2) of title 26, section 607 of the Revenue Act of 1928. But no deficiency is justified for another and more fundamental reason. The question is of the validity of a tax, in computing which the net income—calculated by deducting what the statute allows—must be the multiplicand, regardless of whether any of the deductions have already been wrongfully taken in earlier years. The doctrines of a court of equity are irrelevant to the levying of taxes; Congress alone lays down the conditions, and has not attempted to bring other years into hotch-pot. Quite other considerations decide whether a sum, once paid as a tax, shall be recovered; the mere payment creates no obligation to return it, the taxpayer makes it at the peril of showing that in common justice it ought not to be retained. Farren v. Commissioner, 10 Cir., 82 F.2d 141, is not to the contrary; it only held that, since the taxpayers failed to prove the cost of the shares sold, they must be content to have the whole proceeds taxed as profit. On the other hand, Salvage v. Helvering, 2 Cir., 76 F.2d 112; Id., 297 U. S. 106, 56 S.Ct. 375, 80 L.Ed. 511, cannot be reconciled with the notion that the validity of a deduction in a later year shall be measured by recourse to the assessments of earlier years.

The order will be modified as to the first item by deducting $590.75 from the income for 1932; it will be affirmed as to the second item; it will be reversed and the claimed deductions allowed as to the third and fourth items.