## WIEBOLDT v. COMMISSIONER OF INTERNAL REVENUE.
### No. 7167.

Circuit Court of Appeals, Seventh Circuit.
June 13, 1940.

Edwin C. Austin, Merritt C. Bragdon, and Middleton Miller, all of Chicago, Ill. (Sidley, McPherson, Austin & Burgess, of Chicago, Ill., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Ellis N. Slack, Sp. Assts. to the Atty. Gen., and J. P. Wenchell and John W. Smith, Bureau of Internal Rev., both of Washington, D. C., for respondent.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

This petition for review of a decision of the Board of Tax Appeals presents the question whether a certain loss sustained by petitioner in 1934 was t? ˡ˄ as an ordinary or a capital loss. Thᴄ ˡ of Tax Appeals found that it was the ᴸᵘˠᴸ hence held that only a partial deduction could be taken in computing the taxpayer's net income for the year. Petitioner contends that it was an ordinary one, deductible in full under the provisions of the statute.

The facts were stipulated. In 1927, petitioner purchased for investment purposes an apartment building, paying therefor $30,000 in cash, and assuming an existing mortgage for the same amount. In January, 1934, petitioner defaulted in the payment of interest then due on the mortgage indebtedness. At that time, his indebtedness on the property exceeded its fair market value. Later in the same year petitioner executed a quitclaim deed to the property which he delivered, together with securities having a market value of $5,000, to the mortgagee, who thereupon released petitioner from his personal liability on the mortgage indebtedness which he had assumed. The question is whether this transaction constituted a "sale or exchange of capital assets," deduction from the loss of which was limited by statute to $2,000.[1]

Petitioner relies upon two cases decided by the Courts of Appeals for the Third and Sixth Circuits: Commissioner v. Freihofer, 102 F.2d 787, 125 A.L.R. 761, and Commissioner v. Hammel, 108 F.2d 753. Both of these cases held that a judicial, involuntary sale—by foreclosure of the mortgaged premises, did not constitute such a "sale or exchange" of capital assets as to bring the transfer within the provisions of section 117(d) of the Act. These decisions were criticized by the Court of Appeals for the Second Circuit in the case, Commissioner v. Electro-Chemical Co., 110 F.2d 614, which had before it the same question, of the interpretation of the section as applied to a sale under foreclosure proceedings: "We feel compelled to differ with the foregoing decisions and to hold that Sec. 117 (d) applies to the present case and precludes the allowance of a deduction of more than $2000. Section 117(d) does not confine the meaning of the word 'sale' to voluntary transfers by the taxpayer nor can we see any reason for discriminating between the liquidation of a taxpayer's interest through sales made by himself and sales made by an officer of the court." The conflict between the three decisions will no doubt be resolved by the Supreme Court which has granted certiorari in the Electro-Chemical case (June 3, 1940, 60 S.Ct. 1097, 84 L.Ed. ——).

We consider it significant, however, that in two other cases involving the question presented by the case at bar, of the applicability of the section to *voluntary* transfers to avoid foreclosure proceedings, Rogers v. Commissioner, 9 Cir., 103 F.2d 790, and Pender v. Commissioner, 4 Cir., 110 F. 2d 477, the Supreme Court has denied certiorari (October 9, 1939, Rogers v. Commissioner, 308 U.S. 580, 60 S.Ct. 98, 84 L.Ed. ——, and June 3, 1940, Pender v.

---

[1] Sec. 117(d), Revenue Act 1934, 26 U. S.C.A.Int.Rev.Acts, page 708. "Limitation on Capital Losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. * * * "

Commissioner, 60 S.Ct. 1103, 84 L.Ed. ——). It is fair to infer from this action that the Court found no conflict between these decisions and those involving involuntary sales.

The Pender case, decided by the Court of Appeals for the Fourth Circuit, involved facts practically identical with those of the case at bar, namely, a loss resulting from the surrender by quitclaim deed of the equity in mortgaged real estate, together with the transfer of other property, in exchange for the extinguishment of the mortgagor's liability on the mortgage notes. Petitioner contends, however, that neither of these cases considers the principal question raised by himself, namely, that his loss was sustained when the investment became worthless, and not later, in the same year, when the title was transferred, and he calls attention to the fact that it was stipulated that at the time of petitioner's default in payment of the mortgage obligations, the amount of the indebtedness exceeded the value of the property. He argues, therefore, that "the subsequent delivery of the quitclaim deed, the fact upon which the Commissioner relies, changes the character of the loss no more than the subsequent sale of a worthless security for a nominal amount." This property was not worthless, however, and until the actual transfer by the quitclaim deed, petitioner retained rights in it which might or might not prove to be of value. While it is true that the courts have held that in the case of worthless securities, the loss is to be taken as of the time they became worthless, and that their sale subsequent to that event does not fix the loss (see Schmidlapp v. Commissioner, 2 Cir., 96 F.2d 680, 118 A.L.R. 297; De Loss v. Commissioner, 2 Cir., 28 F.2d 803), we think this rule cannot be applied in the case of real estate which is not itself worthless, even though it be conceded to be of less value than the owner's indebtedness on it. As stated in the Schmidlapp case, supra [96 F.2d 682, 118 A.L.R. 297] "As long as assets have any value whatever, a gain or loss 'results' from their sale, their 'unrealized' depreciation not being 'recognized' until then."

A further objection appears to the adoption of petitioner's theory of worthlessness in the difficulty if not impossibility of fixing the time when his interest in the property became worthless. It is true that the parties stipulated during the course of this proceeding that petitioner's indebtedness on it exceeded its fair market value in January, 1934, at the time of his default in the mortgage obligations. Petitioner seeks to use this default to establish the date when it became worthless, since under the Illinois law, by that default the mortgagee became entitled to possession of the property, and his own interest in it sank to the level of a mere equity of redemption. See Rohrer v. Deatherage, 336 Ill. 450, 168 N.E. 266; Wolkenstein v. Slonim, 355 Ill. 306, 189 N.E. 312. We are of opinion, however, that that mode of fixing the identifiable event is just as arbitrary as the use of a sale, for a nominal amount, of worthless securities to fix the loss on them. Here we have the case of a fully solvent mortgagor, as indicated by the fact that he received a substantial salary and had very substantial investments. He was, therefore, well able to continue meeting his obligations under the mortgage, a fact that he apparently recognized by the fact that he was willing to deliver property valued at $5,000 to obtain his release from those obligations. Are we to say that it was the default that rendered the property worthless, or would it not be more realistic to say that the default simply evidenced petitioner's recognition of the fact that the property was no longer worth enough to justify his continuing to meet those obligations, having become so at some previous time. We see no justification for adopting the default as the identifiable event to fix the loss. On the other hand, we think it is fair to say that the loss was consummated by the subsequent liquidation of petitioner's interest in the property which has all the elements of a sale or exchange. It was a transfer of capital assets which certainly had some value, for a consideration arising out of the release of an obligation of the transferor. We therefore agree with the Board of Tax Appeals that the loss resulting from this transfer was a capital one, and that, as they put it in their opinion, "whether the final result was in fact favorable to the mortgagee or to petitioner appears of little significance. The possibility that one of the parties might, and in most sales or exchanges probably does, obtain a better bargain than the other does not serve to make a transaction any less a sale or exchange."

Decision affirmed.