**Lloyd U. NOLAND, Jr., and Jane K. Noland, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 7766.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 20, 1959.

Decided June 10, 1959.

George D. Gibson and H. Brice Graves, Richmond, Va. (T. Justin Moore, Jr., and Hunton, Williams, Gay, Moore & Powell, Richmond, Va., on brief), for petitioners.

Robert D. Hoffman, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attorneys, Department of Justice, Washington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

By their petition to review a decision of the Tax Court, Lloyd U. Noland, Jr. and his wife, who filed joint returns, seek to overturn the Commissioner's disallowance of miscellaneous deductions claimed as business expenses of the husband.

The taxpayer, Mr. Noland, is an executive of six corporations conducting substantial and profitable businesses. He is the president and a director of the Noland Company, Incorporated, which has its principal office in Newport News, Virginia, and which is engaged, in several states, in the wholesale distribution of plumbing, heating, industrial and electrical equipment and supplies, and of machine tools. He is chairman of the board of directors of Virginia Engineering Company, Inc., a director of Tidewater Construction Corporation, chairman of the board of directors of Richmond Hotels, Incorporated, president and a director of Biggs Antique Company, Incorporated, and president and a director of Antietam Hotel Corporation.[1]

His adjusted gross income exceeded $299,000 in 1952 and $263,000 in 1953, the years with which we are concerned. His compensation by the Noland Company in 1952 was $42,230, of which $12,230 was his salary and $30,000 a bonus, and in 1953, $40,480, of which $25,480 was salary and $15,000 a bonus.

■ The expenses with which we are concerned may be classified as follows:

(1) The largest single item in each year was the cost of an elaborate party given at Christmas time for the personnel of the home office of the Noland Company. For years, the company, itself, had been giving a Christmas party in its offices, but the taxpayer felt they were of little worth. After he became president in 1951, he decided to enlarge the party by including the spouses of employees, to move the party to the Hotel Chamberlain and to add entertainment and dancing. He also decided to pay for the party, out of his own funds, because, he testified, he felt that would improve his personal relations with the personnel of the home office and relieve the company from pressure to give similar parties for the personnel of each of its many branch offices.

(2) In 1953, the Peninsula Industrial Committee, an affiliate of the Virginia Peninsula Chamber of Commerce, undertook to raise $125,000 for use in promoting the industrial development of the area. The taxpayer was a member of the board of the Committee, and served as chairman of the campaign. Obviously, the businesses of some of the companies for which the taxpayer worked were closely related to the purposes of the Committee, and they contributed to the campaign. In addition, the taxpayer made a personal contribution of $1500 to the campaign, which met with prompt success. Most of the contributions to the campaign were by corporations, but there were over 200 individual contributors.

(3) Dues to a number of clubs and associations, some of which, he testified, he used not at all, but had joined because some business associate or customer had requested him to do so, one of which he used for the entertainment of business associates and others of which he had joined because it gave him an opportunity to mingle socially with people he regarded as actual or potential customers, or in position to "influence" business.

(4) Subscriptions to periodicals of general interest, such as Time. The cost

1. The Noland Company was founded by the taxpayer's father and was well-established when the taxpayer became employed by it. He and members of his immediate family are its controlling stockholders. So far as appears, though it is uncertain on this record, each of the other companies were established before his association with them, and he, or members of his family, are the owners of substantial proportions of the stock of each. At least, no contention is made here that the taxpayer is a promoter, a management consultant or a specialist in the revitalization of declining managerial organizations, or that he is engaged in any business other than that of earning his compensation from the enumerated corporations.

of subscriptions to matter more exclusively of business interest, as the Wall Street Journal, was allowed by the Commissioner. The taxpayer testified it was necessary that he be informed of general affairs in order to converse effectively with his associates and make speeches.

(5) Contributions to schools, a public library and other organizations which the Commissioner agreed would qualify as charitable contributions, but not as business expense.

(6) A general miscellany of expense items, principally relating to entertainment, much of it in taxpayer's home, and to gifts and remembrances. Many of these items are a prorated portion of the total cost, other portions of the total cost having been charged to one or more of the corporations as reimbursable expense. The unreimbursed portion of these items was subject to a further allocation between "unreimbursed business expense," for which deduction was claimed, and "personal expense" for which no deduction was claimed. The allocations were his own, and he made no attempt to obtain complete reimbursement for these items, for he felt the total cost was not properly chargeable to the corporations.

■■ We start with the assumption that every person who works for compensation is engaged in the business of earning his pay, and that expense which is essential to the continuance of his employment is deductible under § 23(a)(1)(A) of the Internal Revenue Code of 1939 (26 U.S.C.A. § 23). See Hill v. Commissioner, 4 Cir., 181 F.2d 906; Schmidlapp v. Commissioner, 2 Cir., 96 F.2d 680, 118 A.L.R. 297. Salary has been treated as business income within the meaning of § 122 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 122. Batzell v. Commissioner, 4 Cir., 266 F.2d 371; Roberts v. Commissioner, 5 Cir., 258 F.2d 634; Pierce v. United States, 9 Cir., 254 F.2d 885; Overly v. Commissioner, 3 Cir., 243 F.2d 576; Folker v. Johnson, 2 Cir., 230 F.2d 906. The business of a corporation, however, is not that of its officers, employees or stockholders. Though the individual stockholder-executive, in his own mind, may identify his interest and business with those of the corporation, they legally are distinct, and, ordinarily, if he voluntarily pays or guarantees the corporation's obligations, his expense may not be deducted on his personal return. Deputy v. du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607; Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397. Nor may a corporation deduct as a business expense, payments which clearly further the businesses of its stockholders, but not its own. City Ice Delivery Co. v. United States, 4 Cir., 176 F.2d 347. The rule has particular applicability to closely held corporations where there may be temptation to transfer expense so that it may be deducted in the highest brackets. It is not suggested that the taxpayer here, when he personally assumed the cost of the annual Christmas party of the Noland Company, was prompted by any motive other than those he declared, but he was the dominant officer and stockholder, and the fact is that the deduction on his return, rather than upon the corporation's, would produce a net loss of revenue, a circumstance which naturally causes the Commissioner to look askance at the transaction.

The taxpayer, here, does not question the rule. Rather, he sought to prove in the Tax Court that the Noland Company required him to incur the expenses. His proof shows that the Noland Company, since its inception many years ago, has pursued a policy of paying liberal bonuses to those key employees whose efforts had been most productive. Under a continuing plan, twenty-five per cent of profit before taxes is set aside each year as a bonus fund. In the years in question and those immediately preceding, the fund approximated a million dollars a year. A committee of directors, including taxpayer, allocated the fund among the executives and key employees in the home and branch offices, and there was testimony that it had been so handled that

the participating employees had a reasonable expectancy of appropriate reward in the bonus allocation for increases in business.

There was also testimony that the Noland Company restricted the use of expense accounts. Salesmen and executives were reimbursed for their "normal" expenses, including the cost of entertainment of customers having current business relations with the company, but were not reimbursed for expenses incurred in the "extra curricular" promotion of new business or the entertainment of fellow employees.

It is doubtful that this showing differentiates this company from hosts of others which employ liberal bonus and incentive plans and which impose reasonable limitations upon the use of expense accounts. A director testified that the two policies had led him to feel encouraged to spend his money as well as his time in extra hours in an effort to develop new business, and, doubtless the bonus plan did encourage additional effort. The testimony would support a finding that there was relation between increases in business and the amount of the bonus of the employees who produced it, but no suggestion that the amount of money an employee spent in promotional activity had any direct effect upon his bonus or was even known to the directors who allocated the bonus fund.

As proof of an affirmative requirement that the taxpayer make the expenditures in question, we agree with the Tax Court that it was "vague" and "unsatisfactory." A different inference seems more likely. While an employee, generally, was not reimbursed for his cost in entertaining his fellow employees, the company had paid the cost of the Christmas party for years. There is no suggestion that it would not have done so in 1952 and 1953, if the taxpayer had not elected to stand the cost himself. There was no direct testimony relating the supposed policy to the taxpayer's contribution to the Peninsula Industrial Committee, to which the company also contributed, and the taxpayer's entertainment expense was allocated in part to the company. Perhaps the Commisioner or the Tax Court might have found that the taxpayer's allocation of his entertainment expense was a result of the supposed policy and in accordance with it, but the taxpayer's only testimony was that he attempted an "equitable" allocation of those expenses.

Certainly the proof was not so certain or definite as to compel a finding that these expenditures were required by the company[2] or the conclusion that they were deductible business expenses of the taxpayer.

A corporate executive is normally expected to be responsive to his social obligations and to discharge his civic and community responsibilities. These usually grow in magnitude as the executive grows in success, and, doubtless, it is true, as the taxpayer suggests, they have a certain relation to the positions he occupies, for the positions measure his personal success and affluence. They are, nonetheless, his obligations and responsibilities, and the expense their recognition imposes upon him is personal, not business expense. So his expenditures to increase his general learning, to keep informed and increase his personal effectiveness are personal. As Mr. Justice Cardozo said in Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 9, 78 L.Ed. 212:

> "* * * Reputation and learning are akin to capital assets, like the good will of an old partnership. Cf. Colony Coal & Coke Corp. v. Commissioner of Internal Revenue, 4 Cir., 52 F.2d 923. For many, they are the only tools with which to hew a pathway to success. The money spent in acquiring them is well and wisely spent. It is not an ordinary expense of the operation of a business."

They are comparable to expenses to qualify oneself for advancement or to obtain

**2.** See Hill v. Commissioner, 4 Cir., 181 F.2d 906; Schmidlapp v. Commissioner, 2 Cir., 96 F.2d 680, 118 A.L.R. 297.

new office. McDonald v. Commissioner, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68; Mays v. Bowers, 4 Cir., 201 F.2d 401. It is greatly to be doubted that expenses, which are clearly personal in nature, could be converted into business expenses of the individual by a formalistic requirement of his employer that they be incurred. Personal, living and family expenses are nondeductible by the express provision of § 24(a)(1), 26 U.S.C.A. § 24(a)(1). No magic form of words occurs to us by which an employer can convert them into something else, and relieve his employees of a portion of the tax burden uniformly borne by all other individuals.

 To distinguish between such expenditures and those having a closer relation to business is not easy. Answers turn upon particular factual situations, and distinctions are usually a matter of degree. If the expense has been billed to an employer and has passed a critical scrutiny of corporate officers concerned with the elimination of needless expense, it becomes prima facie an allowable business expense of the corporation. When the corporation, reimbursing its officers and employees for direct expense incurred in furthering its business, does not reimburse an officer for particular expense, that expense prima facie is personal, either because it was voluntarily assumed or because it did not arise directly out of the exigencies of the business of the corporation. See Commissioner v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203.

To establish that a particular expense, though unreimbursable, was an ordinary and necessary expense of the business of the executive, apart from that of the corporations, requires proof of some certainty and directness. We agree with the Tax Court that the proof here was deficient in those qualities.

The Tax Court found, and the evidence shows, that the taxpayer is a man of generosity and public spirit. His testimony also shows, not unnaturally, that he identifies himself and his business with the several corporations and their businesses, and all of these are further identified with the interest and growth of the community. Such identification frequently lends a business significance to personal hospitality and generosity without making either wholly factitious,[3] but the business significance, upon this showing, is immediately that of the corporations, only derivatively that of the executive-stockholder. See Greenspon v. Commissioner, 8 Cir., 229 F.2d 947.

Affirmed.

---

**3.** See Schmidlapp v. Commissioner, supra.