William R. Lickert and Betty J. Lickert v. Commissioner.
Lickert v. Commissioner
Docket No. 94879.
United States Tax Court
T.C. Memo 1964-47; 1964 Tax Ct. Memo LEXIS 286; 23 T.C.M. (CCH) 376; T.C.M. (RIA) 64047; February 28, 1964
*286 Petitioner, in charge of developing good customer relations for his employer, expended certain amounts during the year in question for transportation, meals, lodging, and entertainment. He kept expense diaries of his various expenses so incurred throughout the year and was reimbursed in the amount of $8,999.06 by his employer on the basis of the diaries as presented. Petitioner did not report any of this amount as income on his income tax return. Respondent allowed petitioner to exclude only $2,459.08 of this amount. Held, petitioner was not required to include in his taxable income for the year 1959 any amount of the reimbursement for expenditures he received from his employer. Held, further, petitioner is not liable for the addition to tax under section 6653(a), I.R.C. 1954. Lee O. Hill, for the petitioners. John H. Menzel, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioners' income tax for the taxable year 1959 in the amount of $2,175.53 and an addition to tax for that year in the amount of $108.78. The issues for decision are: (1) Whether petitioners must include in their taxable income any part *287 of the amounts received by petitioner from his employer as reimbursement for travel and entertainment expenses. (2) Whether petitioner is liable for an addition to tax under section 6653(a) of the 1954 Code. [1] William R. Lickert, herein referred to as petitioner, and Betty J. Lickert, husband and wife residing in Charleston, W. Va., filed their joint income tax return for the calendar year 1959 with the district director of internal revenue, Parkersburg, W. Va. Since 1954 and during the year in question petitioner was employed as vice president and general manager of the Asbestos and Insulating Co. of Charleston, W. Va., hereinafter referred to as Asbestos. The major part of that company's operations involved the distribution of industrial insulation and in this respect it also acted as a contractor for various jobs in which this product and some of its others were used. In addition, it undertook the wholesale distribution of other building materials. Petitioner was the principal operating officer of Asbestos. In addition to his general administrative duties, petitioner was responsible for *288 developing and keeping good customer relations for Asbestos. In furtherance thereof petitioner found it important to keep in close contact with purchasers and users of insulating and building materials to assure that Asbestos' products were specified. Petitioner also visited the various purchasers of its products to make certain that the materials were being properly handled where purchased by jobbers and to consult with and advise the various construction engineers where the product was being handled by such persons. In addition petitioner had business meetings with the suppliers of Asbestos to insure the regular and adequate supply of goods, and to discuss price and quality of the products purchased by Asbestos. Petitioner also represented the company on a number of state, local, and national trade associations, often serving as an officer or director thereof. These aspects of petitioner's employment required a certain amount of travel away from the company's home office, both in the Charleston area and in other cities in and out of West Virginia, and necessitated certain expenditures by petitioner for transportation, lodging, meals, and entertainment of the various purchasers or *289 suppliers. The compensation received by petitioner during the year in question pursuant to his employment consisted of a base salary of $10,000 plus 12 1/2 percent of the net profits of the business. Petitioner reported $17,817.83 as total compensation received from Asbestos on his 1959 return. In addition, petitioner was furnished with an automobile at company expense and was reimbursed for his out-of-pocket transportation, lodging, meals, and entertainment expenses incurred in the course of his employment. The company required petitioner to keep records of such expenses and to submit them to the company auditor for reimbursement. During the year in question, and prior thereto, petitioner kept records of his travel and entertainment expenses and was reimbursed in the following manner: He made a memorandum of the daily expenses incurred on a memorandum pad and, at the end of the day or within 2 or 3 days thereafter, recorded from these memoranda the various amounts in "expense account diaries" furnished by the company, each expenditure being entered in the approppriate space for hotel, meals (broken down into breakfast, lunch, and dinner), tips, telephone and telegraph, transportation *290 expenses, entertainment, etc. The entries for entertainment usually indicated the type of entertainment and the individuals involved. After the expenditures were so recorded, petitioner discarded the memoranda pads and most of the original receipts he may have obtained. At the end of the month the diaries, along with a daily summary sheet thereof, were submitted to the company auditor for his approval and payment. The "diaries" and summary sheets were retained by the auditor and were available for inspection by the other officers and directors of Asbestos. On the basis of the documents submitted, petitioner was reimbursed by the company for such expenditures in the total amount of $8,999.06 for the year 1959. Every expenditure for which petitioner was reimbursed by Asbestos during 1959 was accounted for in the manner described and no reduction was made between the amount as recorded by petitioner and the amount approved by Asbestos. There are 691 shares of the capital stock of Asbestos issued and outstanding, held by 10 stockholders. Petitioner owns 30 shares of the stock and no other shares are owned by anyone related to petitioner. Four hundred and six of the outstanding shares are *291 owned by J. Roy Harris, who is president of Asbestos and is also president of West Virginia Steel Corporation and Westco Corporation, whose offices are across the street from the offices of Asbestos. Harris from time to time discussed petitioner's expense accounting with petitioner and the same was an occasional subject of discussion in meetings of the board of directors of Asbestos, which consisted of Harris, petitioner, and two other stockholders. None of petitioner's expenditures was disapproved. Petitioner, in preparing his 1959 joint income tax return, did not report as income the amount of $8,999.06 paid to him by Asbestos as reimbursement for moneys expended pursuant to his employment, nor did he claim a deduction therefor. In addition, petitioner deducted $170 for West Virginia sales tax based upon his own estimation of the amount of tax he paid, and he failed to report as income $210 in dividends received from Asbestos and $65.02 of interest on a savings account in a bank in a city where he had lived before moving to Charleston. In his notice of deficiency respondent added to the taxable income of petitioner $6,539.98 of the amount received by way of reimbursement from Asbestos, *292 allowing a deduction of $2,459.08 of the total reimbursement, based in part on certain original receipts which were still in petitioner's possession. He also added to petitioner's gross income $160 of dividends ( $210 less the $50 exclusion) and the $65.02 of interest. Respondent disallowed $30 of the estimated $170 deduction for State sales tax claimed by petitioner on his return. He also assessed an addition to tax for negligence in the amount of $108.78 under section 6653(a). Petitioners spent the sum of $8,999.06 for travel and entertainment proximately related to his employer's business during the year 1959. Petitioners' underpayment of tax for the year 1959 was not due to negligence or intentional disregard of rules and regulations. Opinion The primary issue is whether petitioners are entitled to deduct, in arriving at adjusted gross income [2] *293 and taxable income, [3] travel and entertainment expenses for which petitioner was reimbursed by his employer, in excess of the amounts allowed by respondent. During the year 1959 petitioner submitted to his employer, in the manner outlined in our Findings of Fact, expenditures for traveling and entertainment on behalf of the employer's business in the total amount of $8,999.06, for which he was reimbursed by his employer. Petitioners did not report this sum on their return for 1959 and did not claim any part of it as a deduction. In the notice of deficiency respondent added the entire amount to petitioners' income and "determined that your [petitioner's] allowable deduction for travel and business expenses *294 amounted to $2,459.08." No explanation of how the latter amount was arrived at was given in the notice of deficiency, in the pleadings, or by competent evidence at the trial. When asked by the Court at the opening of the trial the basis for disallowance of the remaining expenditure, respondent's counsel answered that it was for lack of substantiation. It appears to us that petitioner has done about everything required by respondent's regulations, effective at the time, [4] *296 *297 in reporting and substantiating his reimbursed expenses. Section 1.162-17(b)(1), Income Tax Regs., provides that an employee need not report on his return expenses for travel and entertainment incurred by him for the benefit of his employer for which he is required to and does account to his employer and is repaid through advances, reimbursements, etc., provided the total amount of such advances and reimbursements is equal to such expenses. The evidence indicates that petitioner accounted to his employer for his expenses somewhat in detail, that the employer's accounting supervisor, and sometimes the president and board of directors of his employer, checked and discussed these expense accounts, that petitioner was *295 reimbursed by his employer in the exact amount he claimed, and that he spent the amounts claimed on his employer's business. Under the above provision of the regulations, petitioners were not required to report the reimbursements on their return. To substantiate his expenditures petitioner kept a daily diary in which he recorded his expenditures for meals, lodgings, transportation, telephone and telegraph, tips, entertainment, *298 and other categories in considerable detail, usually with names or initials and a note to indicate whom he entertained and what the entertainment consisted of. These small books in which the daily entries were made covered 1 month each and were delivered to petitioner's employer at the end of the month to support his claimed expenditures. They were kept by the employer and were available for inspection by both the employer and respondent's agents. There is no question that petitioner's employer reimbursed him the full amounts claimed. Section 1.162-17(d)(1), Income Tax Regs., provides that ordinarily an employee who accounts to his employer will not be called upon to substantiate expense account information, except in certain specified situations, the only possibly pertinent one of which is where it is determined that the accounting procedures used by the employer for the reporting and substantiation of expenses by employees is not adequate. Here we have no evidence that the employer's accounting procedures were inadequate. The president and principal stockholder of petitioner's employer testified that petitioner's accounting was adequate so far as he was concerned. Petitioner owned *299 less than 5 percent of the stock of the company and no reason is suggested why the company would be willing to reimburse petitioner for expenses not incurred for the benefit of the company. Counsel for respondent did not ask any of petitioner's witnesses questions about the accounting procedures which would indicate they were inadequate - and respondent offered no evidence thereof on his own behalf. Respondent's position seems to be that inasmuch as a large part of the itemized expenditures were for entertainment, and petitioner had no receipts or underlying documentary proof of the entries made in the daily diaries, the diaries are not admissible evidence to substantiate the expenditures and their business connection. Consequently, respondent apparently felt he was not required to examine the diaries or question the entries therein. However section 1.162-17(d)(2), Income Tax Regs., specifically provides that one method for substantiating expenses incurred by an employee is through the preparation of a daily diary or record of expenditures, maintained in sufficient detail to enable him to readily identify the amount and nature of any expenditure, and the preservation of supporting *300 documents, especially in connection with large or exceptional expenditures; but recognizes that the preservation of supporting documents for all expenses is neither feasible nor practical. Petitioner kept such a diary and did preserve some supporting documents for larger expenditures. He was also able to identify from the diaries the date, the amount and the nature of the expenditures, who the persons entertained were, and how their entertainment related to his employer's business. Neither petitioner nor his employer's president was cross-examined in any detail about the entries in the diaries or the nature of the expenditures as related to the employer's business - and respondent offered no evidence of his own in support of his position. We think petitioner has adequately substantiated the amount of the expenditures involved. On brief respondent argues that petitioner failed to prove that the expenditures constitute ordinary and necessary business expenditures, or that they were proximately related to petitioner's business. We are more concerned here with whether the reimbursed expenses were proximately related to the employer's business. Petitioner does not claim that these were *301 expenditures in behalf of his own business, but rather in behalf of his employer's business. It is true that ordinarily an employee must carry the burden of proving that reimbursed expenditures represent ordinary and necessary expenses of his employer's business to be deductible or excludable by the employee. Here, however, we believe petitioners were relieved of that burden to a considerable extent at least. While technically the issue of the business relation of these expenditures may be raised by the pleadings, there is nothing in the notice of deficiency or in the record to indicate that respondent was questioning the business nature of the expenses. [5] *302 On the other hand the Court specifically asked counsel for respondent at the beginning of the trial whether respondent's position was "that these amounts simply have not been substantiated or is it that even if they are substantiated they are not deductible," and counsel answered, "Basically, your Honor, the amounts have not been substantiated in proper form" and that the basis for the disallowance was the fact that they had not been substantiated. Whether the above colloquy between the Court and counsel for respondent would relieve petitioners entirely of their burden of proving the business nature of the expenses, we need not decide. As a practical matter, however, it certainly lightens that burden because neither counsel for petitioners nor the Court would want the record burdened with questions and answers with respect to the business nature of each individual expenditure if the nature thereof was not in dispute. Under the circumstances, we think the record supports the proximate relationship of most of the expenditures here involved to the employer's business and the fact that they were ordinary and necessary expenses of that business. One of petitioner's principal activities was to keep in contact and on friendly terms with the suppliers and purchasers of Asbestos' products. Petitioner testified generally, and with respect to 4 or 5 individuals specifically, that the amounts he spent for travel and entertainment were spent in this connection and that in his opinion *303 these expenditures were necessary and important to his employer's business. His employer evidently thought so too because its president and principal stockholder testified that petitioner was never refused reimbursement for these expenditures; and he also testified that it was not the intention of the company to pay petitioner additional expenses in lieu of salary because he thought the salary paid petitioner was ample. There can be little doubt that expenditures for the entertainment of customers and suppliers is a usual and ordinary expense of a business such as this. See Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930); Schmidlapp v. Commissioner, 96 F. 2d 680 (C.A. 2, 1938); Herman Shumlin, 16 T.C. 407 (1951). While the frequency and the nature of some of the entertainment might suggest questions as to their proximate relationship to petitioner's employer's business, no specific questions were asked about them, and there is no basis in this record for the Court to doubt petitioner's evidence in support thereof. Some of the entries in the diaries were not discussed in detail by petitioner in his testimony. However, petitioner did discuss them generally as being related to his *304 employer's business, and this, coupled with the employer's acceptance thereof and payment therefor and the absence of any evidence to the contrary we think is sufficient to carry whatever burden of proof petitioner may have had with respect to these items. Petitioner's daily diaries were received in evidence over respondent's objection on the ground that they had not been shown to be competent evidence. Petitioner testified that he made the entries in these books either on the day the expenditures were made or within several days thereafter, that this was done in the regular course of his employment, that he had not been able to get receipts for all of his expenditures and that those that he did get were for the most part discarded after he was reimbursed for the expenditures, and that the daily diaries were all that his employer required of him to submit to get his reimbursement. We know of no rule of evidence which would make such records incompetent or inadmissible under the circumstances. See 28 U.S.C. sec. 1732(a) (1958). In fact these are the very type records respondent has suggested in his regulations that employees on expense accounts keep to substantiate their reimbursed *305 expenditures. We conclude that petitioner was not required to include in his taxable income any part of his reimbursement for expenditures for the year 1959. The only issue remaining is whether petitioner is liable for the addition to tax pursuant to section 6653(a). [6] *306 Since it is held that petitioner has properly reported his income with regard to the expense allowance, the remaining amount of respondent's adjustments total only $255.02. This amount is rather nominal, and we have found as a fact from the record as a whole that the omission of this income was not intentional or due to negligence. This finding is dispositive of this issue. We hold that petitioner is not liable for the addition to tax under section 6653(a). Because of certain concessions by petitioners, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. SEC. 62. ADJUSTED GROSS INCOME DEFINED. For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: * * *
(2) Trade and business deductions of employees. - (A) Reimbursed expenses. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer. ↩
3. SEC. 63. TAXABLE INCOME DEFINED. (a) General Rule. - Except as provided in subsection (b), for purposes of this subtitle the term "taxable income" means gross income, minus the deductions allowed by this chapter, other than the standard deduction allowed by part IV (sec. 141 and following).↩
4. The more stringent requirements for substantiating entertainment expenses contained in sec. 274, I.R.C. 1954, enacted in 1962, and sec. 1.274, Income Tax Regs., are not applicable here. The regulation applicable to the year 1959 was sec. 1.162-17, which provides in part as follows: "(b) Expenses for which the employee is required to account to his employer - (1) Reimbursements equal to expenses. The employee need not report on his tax return (either itemized or in total amount) expenses for travel, transportation, entertainment, and similar purposes paid or incurred by him solely for the benefit of his employer for which he is required to account and does account to his employer and which are charged directly or indirectly to the employer (for example, through credit cards) or for which the employee is paid through advances, reimbursements, or otherwise, provided the total amount of such advances, reimbursements, and charges is equal to such expenses. In such a case the taxpayer need only state in his return that the total of amounts charged directly or indirectly to his employer through credit eards or otherwise and received from the employer as advances or reimbursements did not exceed the ordinary and necessary business expenses paid or incurred by the employee. * * *
"(d) Substantiation of items of expense. (1) Although the Commissioner may require any taxpayer to substantiate such information concerning expense accounts as may appear to be pertinent in determining tax liability, taxpayers ordinarily will not be called upon to substantiate expense account information except those in the following categories: * * *
"(iv) Other taxpayers in cases where it is determined that the accounting procedures used by the employer for the reporting and substantiation of expenses by employees are not adequate. "(2) The Code contemplates that taxpayers keep such records as will be sufficient to enable the Commissioner to correctly determine income tax liability. Accordingly, it is to the advantage of taxpayers who may be called upon to substantiate expense account information to maintain as adequate and detailed records of travel, transportation, entertainment, and similar business expenses as practical since the burden of proof is upon the taxpayer to show that such expenses were not only paid or incurred but also that they constitute ordinary and necessary business expenses. One method for substantiating expenses incurred by an employee in connection with his employment is through the preparation of a daily diary or record of expenditures, maintained in sufficient detail to enable him to readily identify the amount and nature of any expenditure, and the preservation of supporting documents, especially in connection with large or exceptional expenditures. Nevertheless, it is recognized that by reason of the nature of certain expenses or the circumstances under which they are incurred, it is often difficult for an employee to maintain detailed records or to preserve supporting documents for all his expenses. Detailed records of small expenditures incurred in traveling or for transportation, as for example, tips, will not be required."
5. Why this was not done we do not know because petitioner may have had some trouble relating some of the expenditures to his employer's business, such as expenditures for petitioner's breakfast and lunch when he apparently was in Charleston.
6. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.