John O. and Eleanor B. Lockwood v. Commissioner.
Lockwood v. Commissioner
Docket No. 4693-69 SC.
United States Tax Court
T.C. Memo 1970-141; 1970 Tax Ct. Memo LEXIS 215; 29 T.C.M. (CCH) 618; T.C.M. (RIA) 70141; June 8, 1970. Filed John O. Lockwood, pro se, 148 W. Spruce St., San Diego, Calif. Andrew H. Weinstein, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency of $507.20 in petitioners' Federal income tax for the year 1966. After certain concessions, the only issues remaining for decision are (1) whether petitioners are entitled to deduct expenditures of $1,568.65 as their ordinary and necessary business expenses; (2) whether they are entitled to a deduction for certain charitable contributions in excess of that allowed by *216 respondent; and (3) the correct amount of their allowable medical expenses. Findings of Fact Some of the facts were stipulated and are so found. John O. Lockwood and Eleanor B. Lockwood (hereinafter called petitioners) are husband and wife who filed their joint Federal income tax return for the year 1966 with the district director of internal revenue at Los Angeles, California. At the time they filed their petition herein they resided in San Diego, California. In February 1966, John O. Lockwood participated in the formation of Momex, Inc., a Nevada corporation, for the purpose of importing and exporting electronic equipment between the United States and Mexico. Momex subsequently purchased an interest in a Mexican corporation, EPISA, as a base for its Mexican operations. John O. Lockwood was expected to serve Momex with his knowledge of electronics and Spanish. He was elected secretary-treasurer of Momex, but he was not a shareholder. His wife, Eleanor, purchased 5,000 shares of one dollar par value stock of Momex for $2,000. This represented about a 25-percent interest in Momex. It was agreed among the shareholders and officers of Momex that the officers would pay out *217 of their own pockets certain traveling and entertainment expenses incurred on behalf of Momex. John incurred substantial expenses of this nature during 1966, traveling between California, Mexico and Nevada. Eleanor accompanied him on these trips. Total unreimbursed expenditures for the two of them amounted to $1,453.65. On one occasion Momex agreed to reimburse John, after he explained that he could not afford the trip. Petitioners donated used furniture and clothing to the Salvation Army and Goodwill Industries in 1966. At that time petitioners had recently been married, so that the quantity of old clothing donated by them was substantial. The only documentary evidence of these gifts which petitioners offered consisted of a letter from Goodwill Industries stating that Eleanor B. Lockwood was "a frequent and regular donor," and a receipt from the Salvation Army for "repairable furniture, clothing and miscellaneous." Petitioners claimed charitable contributions of $250 to the Salvation Army and $300 to Goodwill Industries. On their Federal income tax return petitioners claimed additional charitable contributions as follows: Christ Church
$ 11.60
Opera Guild
10.00
Church
50.00
Klee-Wyck Society
10.00
Crippled Children
2.00
Amvets
1.25
Combo Fandango
15.00
Zlac Bridge Marathon
12.00
Civic Theatre
30.00
San Diego Museum of Man
10.00
Combo Fandango
15.00
Navy League
15.00
John Tracy Clinic
25.00
S.D. Symphony
20.00
S.D. Opera Guild 24.00
Total
$250.85
*218 Petitioners were able to substantiate these amounts and the recpients. Contributions to churches and to the Navy League were in fact $76.25 and $17.20, respectively. However, petitioners failed to prove that the amounts paid to the Klee-Wyck Society, Combo Fandango, and the Zlac Bridge Marathon constituted charitable contributions. Petitioners claimed medical expenditures of $912.82. They have substantiated $806.52 of this, and $74 for disability insurance has been allowed by respondent as a miscellaneous deduction. Petitioners conceded a $300 claimed sick pay exclusion. Opinion Petitioners claimed their travel costs in Mexico as ordinary and necessary business expenses under section 162(a), Internal 620 Revenue Code of 1954. Respondent contends that the expenses were those of Momex rather than expenses of the petitioners, that they were not ordinary and necessary expenses of being a Momex employee, or that they were personal expenses. Petitioners offered no evidence to show what portion of the expenditures was attributable to John and what portion was attributable to Eleanor. Under the circumstances the fair inference to be drawn is that one half of $1,453.65 or $726.83, *219 is attributable to each. We hold that the expenditures attributable to John are deductible as ordinary and necessary expenses of his trade or business of being a Momex officer. We have found that John and the other officers of Momex were required to incur expenses on behalf of Momex without expectation of reimbursement. Schmidlapp v. Commissioner, 96 F. 2d 680 (C.A. 2, 1938); Holland v. United States, 70-1 USTC 9303 (C.D. Calif. 1970); Rev. Rul. 57-502, 1957-2 C.B. 118. Momex could not take a deduction because it made no expenditures and gave no reimbursements for these amounts. We hold that the expenditures attributable to Eleanor are nondeductible. She was not an employee of Momex; she was an investor. Although petitioners made some effort to bring her traveling expenses within the scope of section 212 ("management, conservation, or maintenance of property held for the production of income"), their proof fell far short of their attempt. Petitioners did not show whether her trips were made before or after she became a Momex shareholder, nor did they show how or why a trip to Mexico would be an "ordinary and necessary" expense of managing *220 or conserving her Momex shares. We were told that her investment "warranted a trip to verify the representations made by the founder of Momex." However, absent proof of this assertion, we can as easily conclude that she simply desired to accompany her husband to Mexico. Confronting equally plausible explanations, but no testimony or other evidence on this point, we are constrained to hold that petitioners have failed to carry their burden of proof as to Eleanor's expenses. Rule 32, Tax Court Rules of Practice; Welch v. Helvering, 290 U.S. 111 (1930). Petitioners established that they gave repairable furniture and clothing to Goodwill Industries and to the Salvation Army in 1966. Eleanor had no record of what she gave to these organizations. She merely estimated that she gave "at least 30 to 40 suits and dresses" and "a good deal of furniture." Despite the Court's efforts urging her to be specific, she provided only vague testimony. Therefore, using our best judgment, and bearing heavily against the petitioners whose inexactitude is of their own making, we conclude that the petitioners have not shown that their gifts of donated property exceeded $150 in value. Cohan v. Commissioner, 39 F. 2d 540, 544 *221 (C.A. 2, 1930). The fair market value of used furniture and clothing is usually considerably lower than the price paid for it when new. Frequently, such used property has very little or no value because of its worn-out condition and the fact that it is obsolete because of style or utility. If, as here, recipients cannot furnish either appraisals or detailed receipts, at least taxpayers should keep a contemporaneous record, showing the quantity, a brief description, and the date of their gifts to charitable organizations, which could be acknowledged by an agent of the recipients. [1]
Petitioners wrote checks to various organizations in 1966, and claimed the total amount of $250.85 as a charitable contribution. In some instances it appears that the checks purchased admission to fund-raising events sponsored by charitable organizations. However, petitioners are entitled to charitable deduction only to the extent that their payments exceeded the value of privileges and benefits *222 which they received. Rev. Rul. 67-246, 1967-2 C.B. 104. Accordingly, we have disallowed deductions for admissions to the Klee-Wyck Society, Combo Fandango, and the Zlac Bridge Marathon. We were assured at trial that the checks to the opera, the symphony, the theatre and the museum were not payments for tickets, but were gifts to the charitable organizations. Although we have some misgivings about these amounts, we are inclined to accept petitioners' testimony. Thus, we hold that they are entitled to deduct $230.70 for such charitable contributions. Petitioners substantiated medical expenditures of $806.52, and are therefore entitled to a deduction computed on such amount. 621 Respondent has allowed a $74 deduction for disability insurance. Petitioners have conceded their claim to a $300 sick pay exclusion. To reflect the conclusions reached herein, Decision will be entered under Rule 50. Footnotes
1. A helpful guide to the type of information which should be kept in making gifts of property to charitable organizations is contained in Internal Revenue Service Publication 561, Valuation of Donated Property.↩