Douglas J. M. Graham v. Commissioner.
Graham v. Commissioner
Docket No. 5205-64.
United States Tax Court
T.C. Memo 1966-169; 1966 Tax Ct. Memo LEXIS 115; 25 T.C.M. (CCH) 876; T.C.M. (RIA) 66169; July 19, 1966
Gabriel T. Pap, for the petitioner. Eugene L. Wilpon, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency in the Federal income tax of petitioner for 1959 in the amount *116 of $1,990.77 and an addition to tax under section 6651 [1] in the amount of $23.12. Petitioner has conceded the correctness of that part of the deficiency relating to a deduction for rent. The issues remaining are whether petitioner is entitled to deduct alleged business expenses and charitable contributions in excess of what respondent allowed and whether petitioner is liable for the addition to tax imposed under section 6651 for late filing of his return. Findings of Fact Petitioner is a resident of New York City and filed an individual Federal income tax return for 1959 with the district director of internal revenue, Manhattan district, New York. During 1959, petitioner was employed as a securities analyst by the brokerage firm of R. W. Pressprich & Co. (hereafter referred to as "Pressprich"), which was located at 48 Wall Street, New York City. His job was to write reports on companies on the basis of information collected. He visited the offices of these companies and other persons to obtain appropriate information. He also visited clients or potential clients of the firm in an attempt to get business for Pressprich. *117 Petitioner was a member of the Investment Association of New York, having founded the Government Securities Committee. Pressprich preferred to do an institutional business rather than to deal with individual clients. Pressprich did not pay commissions to employees such as petitioner but their efforts to develop business for Pressprich were recognized in the form of a higher salary or a substantial bonus at the end of the year. Pressprich reimbursed its employees for an expense if there was a direct benefit to the firm. Expenses incurred with existing clients or potential institutional clients were generally considered legitimate for reimbursement purposes. Expenses incurred in attempting to get new individual clients were reimbursed only if Pressprich felt that it derived or was likely to derive a sufficient benefit therefrom. As a result, there was often a "gray area" as to whether or not an expense of the latter type would be reimbursed. In figuring his adjusted gross income, petitioner claimed a deduction for out-of-town travel expenses in the amount of $3,909.56 less $1,110.67 reimbursed by Pressprich, or a total of $2,798.89. In computing his taxable income, petitioner *118 also deducted business expenses in the amount of $3,618.52 less $794.44 reimbursement by Pressprich, or a total of $2,824.08. Respondent disallowed all of the former, $2,798.89, and $2,324.08 (or all but $500) of the latter. Petitioner was reimbursed by Pressprich for every expense for which he sought reimbursement. Petitioner made the following trips in 1959 which he claimed were made for business reasons: Denver, Colorado (two); Columbus, Ohio; Washington, D.C. (two); Hartford, Connecticut (two); St. Louis, Missouri (two); Baltimore, Maryland (three); Philadelphia, Pennsylvania (three); Chicago, Illinois; Dallas, Texas. Petitioner's wife, Nancy Smith Graham, paid $115.03 to the New York Telephone Company during 1959, all of which petitioner claimed represented business telephone calls. Petitioner issued the following checks in 1959 which he claimed were for travel expenses connected with his employment: Date
Payee
Amount
May 29, 1959
Madison Square Travel Bureau, Inc.
$225.31
July 28, 1959
The Mayflower, Washington, D.C.
135.48
July 28, 1959
Trips Unlimited, St. Louis, Mo.
190.41
Oct. 27, 1959
Hilton Credit Corporation
12.62
Petitioner in *119 1959 drew checks in the aggregate amount of $622.86 and his wife drew checks in the aggregate amount of $159.04, or a total of $781.90, which petitioner claimed represented business gifts. Aside from the foregoing items represented by checks, petitioner's claimed business expenses were based on estimates. Petitioner claimed a deduction for charitable contributions in the amount of $1,368. Respondent disallowed $800 of the deduction as follows: 1. $430 out of a total of $520 allegedly contributed to the Brick Church, New York City. 2. $120 allegedly contributed to the Amagansett Church, Long Island. 3. $250 allegedly contributed in cash to other "religious and charitable organizations." Petitioner signed his 1959 return on April 17, 1960. The return was received by the district director on April 26, 1960. Opinion The first issue with which we are concerned is the deduction of $5,122.97 [2] claimed unreimbursed expenses which petitioner deducted under section 162 as ordinary and necessary expenses of his employment. *120 Respondent takes the position that petitioner has failed to prove that he is entitled to deduct this amount. The burden is on petitioner not only to substantiate the expenditures which he claims to have made but to prove they were ordinary and necessary in his business. Rule 32, Tax Court Rules of Practice. With the exceptions hereinafter noted, we hold that he has failed so to do. Petitioner kept no records other than certain cancelled checks for proof that he actually paid the claimed expenses. An affidavit signed by him, containing a list of the people he entertained and the amounts spent, was utilized at the trial simply to refresh petitioner's recollection. In any event, the probative value of the affidavit and of petitioner's testimony therein would be miniscule. The entertainment expenses reputedly evidenced thereby were divided into four broad categories of customers and prospective customers and were arrived at by estimates of the average number of times each was entertained and the average amount in round figures expended on each occasion. Beyond this, the affidavit was made from memory, more than four years after the taxable year in question, and was based entirely *121 on a general list of Pressprich's clients. Most, if not all, of the other expenses, such as $1,566.25 for taxicabs and $731 for meals and lodging, were also estimates. With respect to the items represented by specific checks: (a) The $115.03 paid to the New York Telephone Company represented at least 60 percent of petitioner's home telephone bills, even if we assume that there was in fact expended the sum of $158.34 as claimed on the Form 2106 attached to petitioner's tax return. This seems to us inordinately large. Furthermore, the $115.03 was paid by checks issued by petitioner's wife, who filed a separate return, and there is no evidence that petitioner reimbursed her. (b) As to the $781.90 allegedly expended for business gifts, petitioner did not identify a single person to whom or for what purpose any particular gift was made. Moreover, $159.04 of this amount was represented by checks issued by petitioner's wife and there is no evidence of reimbursement by petitioner. (c) As to the alleged expenditures for business trips covered by three of the four checks presented to us, petitioner was unable to remember what trips were covered or what the purposes of the trips were. *122 With respect to the check to "The Mayflower, Washington, D.C." for $135.48, we are satisfied that the amount represented thereby was expended by petitioner for business purposes and that he could not appropriately have sought reimbursement therefor. Finally, petitioner has not proved for which, if any, of his alleged business expenses Pressprich would not have reimbursed him. Petitioner was reimbursed for every expense for which he sought reimbursement. Under such circumstances it has been held that the unreimbursed expenses are prima facie personal and therefore not deductible. Heidt v. Commissioner, 274 F. 2d 25 (C.A. 7, 1959), affirming a Memorandum Opinion of this Court; Noland v. Commissioner, 269 F. 2d 108 (C.A. 4, 1959), affirming a Memorandum Opinion of this Court, certiorari denied 361 U.S. 885 (1959); William C. Stolk, 40 T.C. 345 (1963), acq. 1964-2 C.B. 7, affirmed per curiam 326 F. 2d 760 (C.A. 2, 1964). We are satisfied, however, that to some extent petitioner incurred expenses which would not have been reimbursed but which nevertheless were ordinary and necessary to petitioner's business. *123 Such expenses fall within the "gray area" to which we have referred and are properly deductible. In estimating the amount of such deduction, we bear "heavily * * * upon the taxpayer whose inexactitude is of his own making." See Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2, 1930). Based upon the entire record, we hold that petitioner is entitled to deduct $750 more than he was allowed by respondent (including the item of $135.48 which we have found was a proper business expenditure). The second issue with which we are concerned is petitioner's deduction of $1,368 for charitable contributions under section 170. Respondent disallowed $430 out of a total of $520 allegedly contributed to the Brick Church, $120 allegedly contributed to the Amagansett Church, Long Island, and $250 allegedly contributed to "religious and charitable organizations." Here again petitioner has the burden of proving his right to the deductions. We note that none of the disallowed contributions has been substantiated by evidence other than petitioner's own testimony. Petitioner testified that he attended and was an usher at the Brick Church weekly except for the summer when he attended the church *124 in Amagansett. He claimed that he contributed to the church he attended an average of $10 weekly, although he deducted $520 to the Brick Church and $120 to the Amagansett Church, or a total of $670. Petitioner's deduction of $250 for miscellaneous contributions which were allegedly made in cash was not itemized as to the names of the organizations nor amounts he gave to them. On brief, petitioner conceded that on at least eleven Sundays he did not make his weekly contributions and that at least $145 of respondent's disallowance was proper. We are satisfied that petitioner made contributions beyond those allowed by respondent, and hold that he is entitled to an additional $350. The third issue with which we are faced is whether petitioner is liable for an addition to tax imposed under section 6651(a) for failure to file a timely return. Petitioner admittedly did not sign his 1959 return until April 17, 1960 (two days after the due date), and the return was not received by the district director until April 26, 1960. Petitioner denies liability for the addition to tax on the ground that, because the return showed a refund due based on an alleged excess of withholding, he was not *125 required to file a return within the meaning of section 6651(a) and the return which he actually filed was merely a claim for refund. Petitioner overlooks the fact that because he had gross income of over $600 he was required to file a return. Section 6012. Petitioner took the risk that in fact he had no additional tax to pay. Absent other proof that petitioner's failure to file was due to reasonable cause, we hold that he is liable for the 5 percent addition to tax. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. Petitioner on his return deducted these expenses in two parts: $2,798.89 as representing out-of-town travel on page 1 in arriving at his adjusted gross income and $2,824.08 as other expenses on page 2 in arriving at his taxable income. Respondent denied the deduction of all of the claimed expenses except for $500. Since the amounts of the deductions or credits on petitioner's return are not dependent upon adjusted gross income and since petitioner itemized his deductions, we treat these two categories collectively.↩