ANTHONY E. R. AND PATRICIA J. MANN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mann v. Commissioner
Docket No. 19519-89
United States Tax Court
T.C. Memo 1993-201; 1993 Tax Ct. Memo LEXIS 206; 65 T.C.M. (CCH) 2598; May 12, 1993, Filed *206 Decision will be entered under Rule 155. H, a teacher during certain years not at issue, moved to metropolitan Washington, D.C. in October 1984 in connection with his employment as a replacement nurse. Ps deducted temporary living expenses on their 1984 income tax return in connection with that move. In April 1985, prior to W's being offered employment in the area, Ps' children (the children) and W traveled to the area to look for a house. W and the children moved to the area in June 1985 in connection with W's employment as an elementary school teacher. Ps incurred temporary living expenses at that time. H allegedly provided meals or entertainment for regular nurses as an incentive to select him as the replacement. Ps paid large amounts for publications and "vocational supplies", allegedly used by W in her classroom. Ps claim depreciation with respect to "tools and equipment" allegedly used by W in her classroom. Ps claim a business credit carryover from 1984 in connection with such items (allegedly used by W in her classroom). Held: The April 1985 expenses are not deductible "moving expenses" with respect to W's employment, because she had not yet obtained employment *207 in the area, or with respect to H's employment, because more than 30 days had elapsed after his obtaining employment in the area. Sec. 217(b)(1), I.R.C.Held, further, notwithstanding that Ps deducted similar expenses in connection with H's move in 1984, Ps may deduct temporary living expenses in connection with W's move in 1985. Held, further, H's employment-incentive expenses are not deductible because they were not substantiated, as required by sec. 274, I.R.C.Held, further, Ps' expenditures for "vocational supplies" were not shown to be related to either P's trade or business and thus are not deductible. Sec. 162, I.R.C.Held, further, Ps' expenses for "tools and equipment" are unrelated to the continuation (or advancement) of either P's career as a teacher, and thus do not qualify for depreciation. Sec. 167, I.R.C.Held, further, because those items are not depreciable (or amortizable), they are not "section 38 property" for which an investment tax credit may be allowed, sec. 48(a), I.R.C., or carried over to 1985. Held, further, the majority of Ps' expenditures for publications was voluntary (or otherwise personal) and *208 therefore is not deductible. Sec. 162, I.R.C.
Anthony E. R. Mann and Patricia J. Mann, pro sese. For respondent: Charles J. Graves and Dale P. Kensinger. HALPERN
HALPERN
MEMORANDUM OPINION HALPERN, Judge: Respondent determined a deficiency of $ 19,809 in petitioners' Federal income tax for 1985. Respondent also determined additions to tax of $ 2,929.14 under section 6651(a)(1); $ 990.45 under section 6653(a)(1); and 50 percent of the interest due on the underpayment, under section 6653(a)(2), for 1985. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The remaining issues for decision are: (1) Whether petitioners may deduct premove expenses of $ 814.71; (2) whether petitioners may deduct temporary living expenses of $ 960; (3) whether petitioners may deduct claimed automobile transportation expenses of $ 324.51; (4) whether petitioners may deduct claimed rent-forfeiture expenses of $ 100; (5) whether petitioners may deduct claimed employment-incentive expenses in the amount of $ 2,242; (6) whether petitioners may deduct claimed miscellaneous *209 itemized expenses totaling $ 4,736; (7) whether petitioners are entitled to a depreciation deduction in the amount of $ 17,332; (8) whether petitioners are entitled to a business credit carryover from 1984, in the amount of $ 1,940 and a current investment credit in the amount of $ 2,394; (9) whether petitioners are liable for an addition to tax, under section 6651(a)(1), for delinquently filing their tax return for 1985; and (10) whether petitioners are liable for additions to tax, under section 6653(a)(1) and (2), for negligently underpaying tax in 1985. Background
Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference. Petitioners resided in Gallup, New Mexico, when they filed the petition herein. Several of the issues in this case are similar to those addressed in the related case of Mann v. Commissioner, T.C. Summary Opinion 1991-4, in which petitioners previously were involved. Discussion
I. Premove Expenses
In October 1984, petitioner Anthony E. R. Mann (Mr. Mann), who was employed as a nurse for the United States Public Health Service, *210 moved from McLaughlin, South Dakota, to Washington, D.C., on account of a job transfer. Petitioner Patricia J. Mann (Mrs. Mann), who was employed as a teacher, remained in McLaughlin, South Dakota, to honor her employment contract with the McLaughlin School. In April 1985, Mrs. Mann and petitioners' children (the children) traveled to Washington, D.C., apparently to find a house in the area. Mrs. Mann's and the children's expenses, including airfare, totaled $ 814.91. [1] At that time, Mrs. Mann had not yet been offered employment in the Washington, D.C., area. Subsequently, she was offered, and accepted, employment in the area as an elementary school teacher. In June 1985, Mrs. Mann and the children moved to Washington, D.C., to join Mr. Mann and for Mrs. Mann to commence her new employment. Petitioners claim a deduction in the amount of $ 814.91 for *211 the premove expenses paid in connection with Mrs. Mann's employment in the Washington, D.C., area. Section 217(a) provides that "There shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work." (Emphasis added.) The key phrase in that provision, "moving expenses", is defined in section 217(b). (b) DEFINITION OF MOVING EXPENSES. -- (1) IN GENERAL. -- For purposes of this section, the term "moving expenses" means only the reasonable expenses -- * * * (C) of traveling (including meals and lodging), after obtaining employment, from the former residence to the general location of the new principal place of work and return, for the principal purpose of searching for a new residence, (D) of meals and lodging while occupying temporary quarters in the general location of the new principal place of work during any period of 30 consecutive days after obtaining employment, or * * *
The premove expenses do not qualify as "moving expenses", in connection with Mrs. Mann's employment, under section 217(b)(1)(C), *212 because Mrs. Mann had not yet obtained employment in the Washington, D.C., area. Further, the premove expenses do not qualify as "moving expenses", in connection with Mr. Mann's employment, under section 217(b)(1)(D), because more than 30 days had elapsed subsequent to Mr. Mann's obtaining employment. Accordingly, those expenses do not qualify as moving expenses under section 217(b), and therefore are not deductible under section 217(a). II. Postmove Expenses
Subsequent to Mrs. Mann and the children's move in June 1985, they had temporary living expenses, including rent ($ 325), phone ($ 100), food ($ 388), gas ($ 58), and electricity ($ 89), totaling $ 960. Previously, on their 1984 return, petitioners claimed temporary living expenses (postmove expenses) in connection with Mr.Mann's move to the Washington, D.C., area from McLaughlin, South Dakota. Mrs. Mann's and the children's postmove expenses, apparently incurred within 30 days of Mrs. Mann's obtaining employment, thus constitute "moving expenses", under section 217(b)(1)(D), and will be allowable under section 217(a) unless some limitation applies. Respondent contends that a limitation does apply, arguing *213 that, in the case of a husband and wife starting work in a new location, temporary living expenses may only be deducted once. Thus, respondent continues, because such expenses were deducted once already -- in connection with Mr. Mann's obtaining employment -- a second such deduction is not allowed. Section 217(b)(3), on which respondent relies, provides in pertinent part as follows: (3) LIMITATIONS. -- (A) DOLLAR LIMITS. -- The aggregate amount allowable as a deduction under subsection (a) in connection with a commencement of work which is attributable to expenses described in subparagraph (C) or (D) of paragraph (1) shall not exceed $ 1,500. * * * (B) HUSBAND AND WIFE. -- If a husband and wife both commence work at a new principal place of work within the same general location, subparagraph (A) shall be applied as if there was only one commencement of work. * * *
Contrary to respondent's argument, section 217(b)(3) limits only the amount of the collective deduction allowable, under section 217, to a husband and wife; it does not preclude the deduction of expenses in connection with both moves (so long as the collective deduction is not excessive). Accordingly, petitioners *214 may deduct the postmove, temporary living expenses here at issue to the extent that such expenses, when combined with those described in section 217(b)(1)(C) and (D) and previously deducted in connection with Mr. Mann's move, do not exceed $ 1,500. Sec. 217(b)(3). In her brief, respondent "notes that petitioners claimed temporary living expenses for four people for 30 days at $ 14.00 a day in regard to * * * [Mr.] Mann's 1984 move * * *". Indeed, in their Computation For Entry of Decision in the related case of Mann v. Commissioner, T.C. Summary Opinion 1991-4, petitioners requested that moving expenses of the sort described in section 217(b)(1)(C) and (D), totaling $ 1,680 (4 x 30 x $ 14 = $ 1,680) be allowed to the extent of $ 1,500. The actual opinion (T.C. Summary Opinion 1991-4), however, observes that Mr. Mann failed to provide substantiation and largely sustains respondent, allowing a deduction of only $ 286. Mann v. Commissioner, T.C. Summary Opinion 1991-4. That result is confirmed by the computation ultimately adopted in that case. Accordingly, because petitioners previously were allowed a deduction of only $ 286 for moving expenses described in section 217(b)(1)(C) *215 and (D), they remain entitled to additional expenses up to $ 1,214. See sec. 217(b)(3). Petitioners' temporary living expenses of $ 960.32 are therefore allowable. III. Automobile Transportation Expenses
Mr. Mann testified at trial that petitioners owned four vehicles during 1984 and 1985, of which one subsequently was sold. He further testified that he moved two of those vehicles in connection with his relocation to Washington, D.C., in 1984. Petitioners claimed automobile transportation expenses for 1985 of $ 324.51, which represented the cost of moving one vehicle 1,583 miles, at a rate of 20.5 cents a mile. Rev. Proc. 85-49, 1985-2 C.B. 716, provides, and petitioners concede, that automobile moving expenses under section 217 are limited to 9 cents a mile (as opposed to the "business rate" of 20.5 cents a mile claimed by petitioners). Accordingly, respondent concedes that petitioners are entitled to claim a deduction for moving one vehicle 1,583 miles, at the rate of 9 cents a mile, resulting in a deduction of $ 142.47. That would appear sufficient to resolve the issue. Mr. Mann, claimed at trial, however, that petitioners *216 moved two vehicles (in 1985, we presume, though he did not specify the year), and thus, are entitled to a second deduction in the amount of $ 142.47 (for a total of $ 284.94). Petitioners have provided no evidence, however, in support of the claim that a second vehicle was moved in 1985. Moreover, no satisfactory explanation has been advanced for the failure to provide such evidence. Accordingly, because Rule 142(a) places the burden of proof on petitioners, we are constrained to conclude that only one vehicle was moved in 1985. Excepting respondent's concession of a deduction of $ 142.47, we sustain respondent on this issue. IV. Rent-Forfeiture Expenses
Petitioners claimed a deduction of $ 100 for rent allegedly forfeited in connection with Mrs. Mann and the children's move in 1985. Mr. Mann testified at trial to this effect, but petitioners have failed to supply a canceled check, lease agreement, or other evidence to corroborate that testimony. Respondent challenges the deduction on the ground that petitioners have failed to substantiate the rent-forfeiture expense. Once again, we think Mr. Mann's testimony insufficient to carry petitioners' burden of proof. *217 See Rule 142(a). Mr. Mann's testimony is severely undercut by petitioners' failure to provide documentation that seemingly would not be difficult to adduce. We therefore are not persuaded that the alleged rent-forfeiture expense was incurred and sustain respondent on this issue. V. Employment-Incentive Expenses
Mr. Mann worked for Holy Cross Hospital as a replacement nurse (PRN), filling in for the regular nurses (regulars) when a replacement was necessary. Mr. Mann testified that, because regulars could choose their replacements, he provided incentives to regulars who chose him. Rather than paying regulars cash, Mr. Mann purportedly would pay certain expenses, such as the cost of a meal at a restaurant or a play, on their behalf. At trial, Mr. Mann described the procedure as follows: THE COURT: You sent money over to the restaurant and said, When * * * [the regular nurse] comes in, give him dinner? MR. MANN: No. What I did is I would -- the places in question are all right around where the hospital was. And what I did was I would go there and have them stamp my credit card and sign it and then give the credit receipt with my credit card indented and my signature *218 to the individual so when they went to eat, all they had to do was fill in the amount. * * *
On their 1985 return, petitioners claimed $ 2,242 in "Outside salesperson expenses", for the employment-incentive expenses described above. Section 162, the most general provision respecting business deductions, permits a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Sec. 162(a). Thus, the taxpayer must demonstrate that the expenditures at issue were (1) paid or incurred, (2) related to the taxpayer's trade or business, (3) ordinary, and (4) necessary. See Rule 142(a). In support of the deduction, petitioners have provided nothing more than various canceled checks and credit card statements indicating substantial payments for meals, plays, and similar entertainment. [2] To that extent, of course, the evidence offered by petitioners demonstrates that the amounts at issue were paid. That evidence, however, does not demonstrate that such expenditures were related to Mr. Mann's business of being a PRN, as opposed to personal expenditures made for petitioners themselves or made gratuitously *219 on behalf of friends. Indeed, the record does not even contain the identities of those entertained by Mr. Mann. We do not think Mr. Mann's uncorroborated testimony is sufficient to meet petitioners' burden of proof. See Rule 142(a). Moreover, there is no evidence other than Mr. Mann's statements as to (1) the business purpose of the expenditures in question, or (2) the business relationship of those to whom he provided the incentives in question. Section 274(d)(4) requires substantiation by adequate records or by sufficient evidence corroborating the taxpayer's own statements of those two elements (among others) for a taxpayer to be entitled to a deduction under section 162 for, among other things, the expenses of gifts or entertainment, amusement, or recreation activities. For the reasons stated, we sustain respondent on this issue. VI. Miscellaneous Itemized *220 Expenses
A. Postage and Repairs
As stated above, Mrs. Mann was an elementary school teacher during the year at issue. Petitioners claim a deduction for $ 2,294 allegedly paid in large part to return incorrect, damaged, or unwanted items ordered for Mrs. Mann's classroom. Petitioners also claim that a portion of the $ 2,294 was used to repair certain damaged items used in Mrs. Mann's classroom. B. Vocational Supplies
Petitioners allegedly spent $ 1,375 on "vocational supplies" for Mrs. Mann's classroom. [3] These items, including crickets, lizards, construction paper, and seasonal decorations, purportedly had a useful life of less than 3 years. C. Allowability
Section 162, on which petitioners presumably rely, permits deductions for "ordinary and necessary" *221 expenditures paid or incurred in the course of a taxpayer's trade or business. Thus, petitioners must establish that the claimed expenditures were (1) incurred, (2) related to either petitioner's trade or business, (3) ordinary, and (4) necessary. See Rule 142(a). 1. Postage and Repairs
With respect to the postage (and repair) expenditures, petitioners were unable to specify any of the items returned (or repaired), or their connection to Mrs. Mann's trade or business of teaching. Moreover, their proof consisted merely of numerous checks made to the order of "Postmaster", "UPS", and "Yellow Freight". Thus, petitioners have failed to convince us that such expenditures were related to the return (or repair) of items used in Mrs. Mann's classroom. Petitioners have failed to carry their burden of proof. See Rule 142(a). 2. Vocational Supplies
With respect to the vocational supplies, petitioners have produced numerous checks (and credit card statements) evidencing payments to department stores, drug stores, pet stores, office supply companies, and the like. Those checks and statements, however, do not indicate the specific items purchased or how much was spent on each *222 such item. Petitioners again have failed to convince us that such expenditures related to Mrs. Mann's classroom. See Rule 142(a). Moreover, because petitioners failed to establish the actual items purchased, we lack sufficient information to conclude that their expenditures were ordinary and necessary, within the meaning of section 162. We sustain respondent on this issue. [4]
VII. Depreciation on Tools and Equipment
Petitioners claim that, between 1977 and 1985, they spent substantial sums on tools and equipment used to assist Mrs. Mann in teaching her elementary school classes (and, to some extent, to assist Mr. Mann who, although he did not teach in 1985, taught in other years). Petitioners claimed depreciation on such tools and equipment in *223 the amount of $ 17,332 for 1985. Such tools and equipment consist primarily of books. They also include Apple II computers, computer programs, a stereophonic sound system, and foreign currency. In general, section 167 permits a depreciation deduction as an allowance for wear and tear on property used in a trade or business or otherwise held for the production of income. The taxpayer must show that the property was used in a trade or business (or other profit-oriented activity). Further, the taxpayer must establish the property's depreciable basis, by showing the cost of the property, its useful life, and the previously allowable depreciation. E.g., Delsanter v. Commissioner, 28 T.C. 845, 863 (1957), affd. 267 F.2d 39 (6th Cir. 1959). Petitioners have failed to meet those requirements. It is well established that, in order to be deductible, business expenses generally must be those of the taxpayer claiming the deduction. E.g., Gantner v. Commissioner, 91 T.C. 713, 726 (1988), affd. 905 F.2d 241 (8th Cir. 1990). Accordingly, an employee may not deduct (or claim *224 depreciation in connection with) expenses voluntarily incurred on behalf of his employer. See, e.g., id. (shareholder-employee of corporation, who purchased computer items and used them in connection with his employment, denied deduction because such purchases, made voluntarily, were attributable to his role as shareholder, rather than that of employee). That rule is a natural consequence of the fact that our tax system generally allows deductions only for the cost of producing income. Accordingly, an employee's trade or business, for tax purposes, is earning his pay, rather than performing certain tasks for his employer. See Noland v. Commissioner, 269 F.2d 108, 111 (4th Cir. 1959), affg. T.C. Memo 1958-60. Thus, expenditures generally are deductible only if related to the continuation (or advancement) of an employee's employment. See id.
This rule is well illustrated by Wheatland v. Commissioner, T.C. Memo. 1964-95. In Wheatland, the taxpayer, a sixth-grade science teacher and part-time electronics engineer, claimed expenditures for three sets of encyclopedias and *225 several items of electronic equipment as deductible teaching expenses. We disallowed the deduction as insufficiently related to the taxpayer's trade or business as a teacher. petitioner himself admitted that * * * neither the books nor the equipment were necessary to carry out his job. Neither did the school authorities think that they were necessary -- at least they refused to pay for them. They may have been helpful to the students and appropriate for use in the classroom and in petitioner's teaching, but there is no evidence that they would enhance petitioner's trade or business -- that of teaching school. [Id.]
In the case at hand, petitioners have not argued, nor would we believe, that they were required or expected to purchase such tools and equipment. Moreover, there is no indication that either petitioner's teaching career was likely to be enhanced by such purchases in a way that would render the expenses ordinary and necessary in their business. We therefore find that petitioners' purchases of tools and equipment were not related in the requisite manner to either petitioner's trade or business of earning income as a teacher. Rather, those expenditures *226 apparently were motivated by petitioners' desire to enhance the education of the children in Mrs. Mann's class and, perhaps, the school, which -- at least in petitioners' view -- lacked adequate materials. Accordingly, such expenditures are personal (rather than related to the production of income), and therefore do not qualify for depreciation. [5] See id.
*227 VIII. Investment Credit Carryover
Petitioners claim a carryover credit, in the amount of $ 1,940, from 1984. Sections 38 and 46(a) allow an investment tax credit to a taxpayer making a "qualified investment". Under section 46(c)(1), a qualified investment means the applicable percentage of the basis (or cost) of "section 38 property". Under section 48(a), section 38 property is limited to certain property with respect to which depreciation or amortization is allowable. As observed above, depreciation is only allowable for property used in the taxpayer's trade or business, or otherwise for the production of income, section 167, and the expenditures at issue are not depreciable. Moreover, because petitioners have not adduced, and we are not aware of, any authority providing that the expenditures at issue are amortizable, we conclude that they are not. Accordingly, because the property at issue is neither depreciable nor amortizable, it is not "section 38 property" for which an investment credit may be allowed. Because the investment credit is not allowable, there can be no carryover to 1985. We sustain respondent on this issue. IX. Publications
Petitioners *228 claim a deduction in the amount of $ 1,067 for purchasing numerous magazines related to their businesses of teaching and nursing. Specifically, petitioners argue that these expenditures relate to (i) professional reading, with respect to both petitioners, and (ii) Mrs. Mann's classroom. In evidence are certain canceled checks indicating payments by petitioners for various publications. Some of those checks are made out to a particular magazine, while others are made out to Publishers' Clearing House, Dell, or some similar distributor. [6] The publications to which petitioners subscribed in 1985 include Smithsonian, Science Digest, Time, Learning, Sesame Street, Instructor, and Consumer Reports. A. Professional Reading
Petitioners have persuaded us that a portion of their expenditures *229 for publications is allocable to professional reading. Expenditures for subscriptions to professional publications can give rise to expenses deductible under section 162(a). See, e.g., Burton v. Commissioner, T.C. Memo. 1986-38. The record contains scant evidence, however, as to what portion of the claimed expenditures is so allocable. Based upon all the facts and circumstances, we find that, with respect to each petitioner, $ 75 is allocable to professional reading (for a total of $ 150). Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Petitioners are entitled to a deduction to that extent. B. Mrs. Mann's Classroom
As stated above, business expenses, to be deductible, generally must be those of the taxpayer claiming the deduction. E.g., Gantner v. Commissioner, 91 T.C. 713, 726 (1988), affd. 905 F.2d 241 (8th Cir. 1990). Thus, expenses voluntarily incurred by an employee on behalf of his employer are not deductible. Id. We find that petitioners' expenditures for publications used in Mrs. Mann's classroom voluntarily were incurred and, consequently, *230 are not deductible. Petitioners have not argued, nor would we believe, that Mrs. Mann was required or expected to purchase publications for her classroom. Moreover, the record lacks any indication that Mrs. Mann's teaching career was likely to be enhanced by such purchases in a way that would render such expenditures ordinary and necessary in her business as a teacher. Accordingly, such expenditures are personal (rather than related to the production of income) and therefore do not qualify for a deduction. Lingham v. Commissioner, T.C. Memo. 1977-152; see also Wheatland v. Commissioner, T.C. Memo. 1964-95. Except to the extent allowed as a deduction for professional reading expenses ($ 150), petitioners' publication expenditures are disallowed ($ 1,067 - $ 150 = $ 917). [7]
*231 X. Addition to Tax for Delinquent Filing
Petitioners' tax return for the 1985 calendar year was due on April 15, 1986. Sec. 6072(a). Petitioners did not file their return, however, until at least September 6, 1986, nearly 5 months later. [8]
Section 6651(a)(1) provides for an addition to tax where a taxpayer fails to timely file his tax return and is unable to show reasonable cause for such failure. That addition to tax equals 5 percent of the net tax due for each month (or portion of a month) in which the return was not filed, limited to a maximum penalty of 25 percent. Petitioners, who filed nearly 5 months after the due date, will therefore be subject to the full 25 percent addition to tax (5 percent for each of 4 full months plus 5 percent for the partial month) if they cannot show reasonable cause for their failure to timely file. Petitioners have made no argument *232 as to reasonable cause, and we see no evidence of such in the record. We therefore find that no reasonable cause exists and sustain respondent as to this addition to tax. XI. Addition to Tax for Negligence or Intentional Disregard of Rules or Regulations
Section 6653(a) imposes additions to tax where the taxpayer's underpayment is due to negligence or intentional disregard of rules or regulations (hereinafter referred to simply as negligence). Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the entire underpayment if any portion of such underpayment is due to negligence. Section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment due to negligence. Respondent has determined the entire underpayment to be due to negligence. Petitioners have the burden of proving respondent's determination to be erroneous. Rule 142(a). The underpayment, for purposes of section 6653(a), is the amount by which the tax liability exceeds the tax shown on a timely filed return. Secs. 6653(c)(1) and 6211(a). Inasmuch as there was no timely filed return in this case, *233 the amount shown on a timely filed return is zero, and the underpayment equals the entire tax liability. Emmons v. Commissioner, 92 T.C. 342, 348-349 (1989), affd. 898 F.2d 50 (5th Cir. 1990). Where, as here, an underpayment is caused by the taxpayer's failure to timely file an income tax return, such underpayment is due to negligence if the taxpayer lacks reasonable cause for such failure. See id. at 349. We have found that petitioners lacked reasonable cause for failing to timely file their Federal income tax return for 1985. Accordingly, the entire underpayment for that year is due to negligence, and we sustain respondent's additions to tax under section 6653(a)(1) and (2). Decision will be entered under Rule 155. Footnotes
1. Petitioners claimed expenses of $ 969.71 on their income tax return, but conceded at trial that $ 155 improperly was claimed, leaving $ 814.71 in controversy.↩
2. Respondent argues that the evidence indicates only $ 1,512.50. For the reasons that follow, we need not, and do not, consider that argument.↩
3. Mr. Mann testified at trial that he too was a teacher. Mr. Mann concedes that he did not teach in 1985, the year at issue, but taught in 1986 and 1987, and used certain of the vocational supplies for which deductions are claimed in this case.↩
4. Respondent contends also that the canceled checks and credit card statements fail to substantiate the entire amount of expenditures claimed by petitioners. Because we find such expenditures, in any event, to be nondeductible, we need not resolve this issue.↩
5. Petitioners' apparent motivation in this regard is laudable, and it is not our intention to see them punished for following through on their beneficent impulses. In fact, the Internal Revenue Code often rewards taxpayers who donate property to a worthy cause: That reward, however, is not a depreciation deduction but a deduction for charitable contribution under sec. 170. We are unable to say that petitioners are entitled to a charitable contribution deduction under sec. 170, however, because petitioners have not raised that issue in their pleadings, see Rule 41, and, in any event, have failed to demonstrate that they meet the numerous requirements of sec. 170. See Rule 142(a)↩.
6. In addition, respondent has conceded that certain checks, evidencing payments for magazines and to distributors, inadvertently were left out of evidence. Accordingly, substantiation is not an issue with regard to those payments.↩
7. We need not, and do not, consider what portion of the remaining $ 917 petitioners have proved allocable to publications purchased for use in Mrs. Mann's classroom, as opposed to more typical personal use by petitioners (pleasure reading). The resolution of that issue would not affect the outcome in this case.↩
8. Petitioners signed and dated the return on Sept. 6, 1986. The return was received by the Austin Service Center on Sept. 12, 1986.↩