T.C. Summary Opinion 2018-40

UNITED STATES TAX COURT

HORACE R. WEAVER AND CANDACE M. WEAVER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 262-15S.                     Filed August 27, 2018.

Horace R. Weaver and Candace M. Weaver, pro sese.

Jason M. Kuratnik and Gary J. Merken, for respondent.

SUMMARY OPINION

HALPERN, Judge: This case was heard pursuant to the provisions of

section 7463[1] of the Internal Revenue Code in effect when the petition was filed.

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure. We round all dollar amounts to the
nearest dollar.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies of $9,010 and $6,370 in petitioners' 2012 and 2013 Federal income tax, respectively, and accuracy-related penalties for those years of $1,802 and $1,274, respectively. We must decide whether petitioners are (1) entitled to deductions for unreimbursed employee business expenses claimed for each of the years in issue, (2) entitled to deductions for trade or business expenses claimed on their 2012 and 2013 returns in excess of the amounts respondent allowed, and (3) liable for the accuracy-related penalties respondent determined.

## Background

### Petitioners' 2012 Return

Petitioners' Federal income tax return for 2012, as originally filed, reported tax of $15,801. They later filed an amended return for 2012 that reported reduced wages and thus reduced tax of $15,476. On Schedule A, Itemized Deductions, of their 2012 return, petitioners claimed a deduction for unreimbursed employee business expenses of $11,590. The return also includes a Schedule C, Profit or Loss From Business, related to a music production business Mr. Weaver conducted that reports the following amounts:

| Description | Amount | |
|---|---|---|
| Gross receipts or sales | $1,510 | |
| Returns and allowances | 300 | |
| Gross profit | | $1,210 |
| Expense: | | |
| Advertising | 1,500 | |
| Car and truck | 9,612 | |
| Contract labor | 7,500 | |
| Depreciation and section 179 | 156 | |
| Office | 400 | |
| Rent or lease | 4,800 | |
| Repairs and maintenance | 1,600 | |
| Supplies | 50 | |
| Travel | 150 | |
| Deductible meals and entertainment | 3,105 | |
| Utilities | 1,550 | |
| Wages | -0- | |
| Cell phone | 2,575 | |
| Total | | (32,998) |
| Net loss | | (31,788) |

The $9,612 deduction Mr. Weaver claimed on his 2012 Schedule C for car and truck expenses equals the sum of a standard mileage deduction of $8,436 (based on 15,200 business/investment miles[2]) and out-of-pocket expenses for

---

[2]The regulations authorize the Commissioner to establish methods under which taxpayers can compute vehicle expenses using a standard mileage rate. See sec. 1.274-5(g), (j), Income Tax Regs. The Commissioner issues annual notices announcing the standard mileage rate for each taxable year. The rate for 2012 was 55.5 cents per mile. See Notice 2012-1, sec. 2, 2012-2 I.R.B. 260. The $8,436

(continued...)

garage rent, tolls, hourly parking, and interest of $1,176. (Petitioners' 2012 amended return reported no changes to petitioners' unreimbursed employee business expenses or the loss from Mr. Weaver's business.)

Petitioners' 2013 Return

Petitioners' 2013 Federal income tax return reported tax of $8,981. Their 2013 Schedule A claimed a deduction of $9,083 for unreimbursed employee business expenses. The Schedule C included in petitioners' 2013 return for Mr. Weaver's music production business reports the following amounts:

---

[2](...continued)
standard mileage deduction reported on Mr. Weaver's 2012 Schedule C equals the product of 15,200 business/investment miles and 55.5 cents.

| Description | Amount | |
|---|---|---|
| Gross receipts or sales | $550 | |
| Returns and allowances | 150 | |
| Gross profit | | $400 |
| Expense: | | |
| Advertising | 500 | |
| Car and truck | 9,442 | |
| Contract labor | 4,250 | |
| Depreciation and section 179 | 78 | |
| Office | 250 | |
| Rent or lease | 4,800 | |
| Repairs and maintenance | 350 | |
| Supplies | 150 | |
| Travel | 550 | |
| Deductible meals and entertainment | 1,600 | |
| Utilities | 1,100 | |
| Wages | -0- | |
| Cell phone | 1,535 | |
| Subscriptions | 190 | |
| Internet | 290 | |
| Total | | (25,085) |
| Net loss | | (24,685) |

The 2013 car and truck expense deduction again equals the sum of two amounts: a standard mileage deduction of $8,023 (based on 14,200

business/investment miles[3]) and out-of-pocket expenses for garage rent, tolls, hourly parking, and interest of $1,419.

The Examination, Notice of Deficiency, and Petition

During the examination of petitioners' 2012 and 2013 returns, respondent's revenue agent initially took the position that the deductions claimed on Mr. Weaver's Schedules C were subject to the limitation provided in section 183, which applies to activities not engaged in for profit. Mr. Weaver, however, was able to establish the requisite profit motive for his music production business and then provided the examining agent with documentation in an effort to substantiate his claimed deductions.

The materials Mr. Weaver submitted included mileage logs for 2012 and 2013 that purported to document his business use of his automobile. The logs show total business miles of 15,062 and 14,067 for 2012 and 2013, respectively. Each log bears the legend "Prepared by Horace Weaver 5/23/14". According to Mr. Weaver, his mileage logs were formatted with automatic date codes so that they would bear the current date whenever printed out.

_____

[3]The standard mileage rate for 2013 was 56.5 cents per mile. See Notice 2012-72, sec. 2, 2012-50 I.R.B. 673. The $8,023 standard mileage deduction claimed on Mr. Weaver's 2013 Schedule C is the product of 14,200 business/ investment miles and 56.5 cents per mile.

Mr. Weaver's testimony regarding how he maintained his mileage logs was inconsistent. He claimed that the information reported was "logged at the time". But he acknowledged that it was not logged "exactly". "I mean," he admitted, "I don't go out the door and then check the mileage." Therefore, the mileage "might not have been exact".

The descriptions of the trips reported on Mr. Weaver's mileage logs tend to be generic. Many bear the description "Promotion/Scouting". Others are described as "Meetings/Rehearsal/Studio/Meetings/Mentoring & Meals". Only a few provide locations, such as "NJ Meeting" or "South philly Meeting". In addition, the miles given for each trip tend to be round numbers. For example, the miles given for over 98% of the entries on Mr. Weaver's 2012 mileage log end in either five or zero.

Mr. Weaver provided respondent's examining agent with the following documentation regarding his deduction for contract labor expenses for 2012: (1) a self-prepared schedule that itemizes the amounts that sum to the $7,500 claimed deduction, including $6,220 of payments to MilkBoy Recording (MilkBoy), (2) another schedule styled as a "transaction detail" of Mr. Weaver's account with MilkBoy covering the period from January 1 through May 10, 2012, (3) copies of credit card charge slips for payments Mr. Weaver made to MilkBoy, (4) an invoice

(marked "paid") for $599 issued by Mirror Image to a Rick Weaver[4] for graphic design services, and (5) an email from Thomas Volpicelli, president of the Mastering House, Inc., with the salutation "Hi Rick", in which Mr. Volpicelli states: "I just sent out the PayPal invoice for $566.74. Sometimes AOL marks emails from PayPal as spam, please let me know if you received it."

The transaction detail for Mr. Weaver's account with MilkBoy does not include a business logo but appears in plain typeface. The document does not list all of the payments Mr. Weaver made to MilkBoy during the period it purports to cover: a payment evidenced by one of the charge slips Mr. Weaver submitted, made on March 29, 2012, does not appear on the transaction detail.

Not all of the charge slips Mr. Weaver submitted are fully legible. Those on which both the date and the amount of payment are legible sum to $4,713.

Mr. Weaver also provided respondent's examining agent with a schedule titled "Meals and Entertainment". That schedule lists amounts and attendees for various dates in 2012. The separate amounts sum to $3,486. All but one of the entries lists as attendees "Horace weaver & Killa Cash Reapaz". (The other entry

_____

[4]We assume Rick to be a nickname used by Mr. Weaver, whose middle name is Richard.

refers only to "18 [unnamed] people".) The schedule, like Mr. Weaver's mileage logs, bears the legend "Prepared by Horace Weaver 5/23/14".

The notice of deficiency disallowed in full the deductions petitioners claimed for 2012 and 2013 for unreimbursed employee business expenses and all of the deductions claimed on Mr. Weaver's Schedules C for those years other than the office expenses claimed for each year and $5,475 of contract labor expenses for 2012. The notice of deficiency also eliminates the offset to gross receipts or sales reported on Mr. Weaver's Schedule C for each year for returns and allowances. The stated ground for all of those adjustments is petitioners' failure to substantiate each item beyond the allowed amount. On August 21, 2014, respondent's examining agent received from his immediate supervisor approval for the accuracy-related penalties determined in the notice of deficiency.

Petitioners' petition expresses disagreement with "[e]ach item on the notice of deficiency".

Trial Preparation

The case was initially scheduled for trial in November 2015. At the calendar call, Jason Kuratnick, representing respondent, advised the Court that his previous efforts to contact Mr. Weaver, including four voicemails and two letters, had been unsuccessful. When the Court recalled the case two days later, Mr.

Kuratnick reported that, while the parties had met and made progress, they had been unable to resolve all of their differences. We thus continued the case and advised the parties of the need for further meetings and communications.

During the summer of 2016, Gary Merken, who had taken responsibility for the case on behalf of respondent, made several efforts to contact petitioners. They did not respond to Mr. Merken or attend either of two meetings he attempted to schedule with them. When we questioned Mr. Weaver about his failure to attend the scheduled meetings, his testimony was evasive, so that we found it necessary to demand yes or no answers and threaten to hold him in contempt if he did not provide them. Mr. Weaver did not specifically deny having received the letters Mr. Merken sent but said he had "no recollection of reading" them and assured us "I don't blow off meetings".

Contrary to the standing pretrial order that we issued to the parties before each session at which the case was scheduled for trial, petitioners did not submit a pretrial memorandum or agree, before trial, to a stipulation of facts.

Respondent, by contrast, submitted a pretrial memorandum before each session. Both of respondent's memoranda allege that petitioners had not assigned

error to his penalty determinations and that, consequently, we should treat them as having conceded their liability for penalties. But those same memoranda also identify petitioners' liability for penalties as one of the issues presented in the case.

 Trial Proceedings

At trial, Mr. Weaver submitted a schedule labeled "Repairs" that shows dates and amounts in four columns: "2012 Actual", "2012 Tax Reported", "2013 Tax Adjusted", and "Labor not reported". The 2012 Tax Reported column lists two amounts, $322 and $1,287, the first dated March 30, 2012, and the second April 2, 2012. The corresponding amounts in the 2012 Actual column for those items are $321 and $1,286, respectively (each a dollar less than the reported amounts). The schedule provides no explanation for the slight difference between the actual and reported amounts. It also labels as a "rounding adjustment" of $9 the difference between the sum of the 2012 Tax Reported amounts ($322 + $1,287 = $1,609) and the $1,600 figure reported on Mr. Weaver's 2012 Schedule C.

The figures listed in the 2013 Tax Adjusted column sum to $2,761. Mr. Weaver provided no explanation, either in the schedule itself or in his testimony at trial, of the difference between the $2,761 repair expenses shown on the schedule for 2013 and the $350 deduction reported on his 2013 Schedule C.

Mr. Weaver also submitted at trial a statement of checking account activity between March 30 and April 9, 2012. The statement lists three payments to Home Depot: a payment of $321 on March 30, 2012, and two payments on April 2, 2012, in the amounts of $1,286 and $144. All three payments appear in the 2012 Actual column of Mr. Weaver's schedule of repair expenses, although only two appear (with $1 discrepancies) in the 2012 Tax Reported column.

At trial, Mr. Merken cross-examined Mr. Weaver regarding his background in tax and accounting and offered into evidence Mr. Weaver's LinkedIn profile. We allowed that evidence over Mr. Weaver's relevance objection on the basis of Mr. Merken's explanation that he was offering the evidence in support of respondent's penalty determinations.

## Discussion

I. Petitioners' Entitlement to the Deductions in Issue

A. Burden of Proof

Rule 142(a)(1) provides: "The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, it shall be upon the respondent." Section 7491 may shift the burden of proof to the Commissioner if, among other things, the

taxpayer complies with substantiation requirements, maintains all required records, and cooperates with the Commissioner's requests for witnesses, information, documents, meetings and interviews.  See sec. 7491(a)(2)(A) and (B). A taxpayer seeking to shift the burden of proof under section 7491(a)(1) has the burden of showing that he satisfied the paragraph (2) preconditions.  E.g., Allnutt v. Commissioner, T.C. Memo. 2004-239, 2004 WL 2339813, at *4.

Petitioners make no argument that they have met the requirements of section 7491:  Their briefs (apparently written by Mr. Weaver) make no mention of that section.[5]  One of petitioners' proposed finding of facts, however, states:  "My wife and I request all expense deductions originally and erroneously classified as 183 adjustments, because if evidence led the IRS to change the adjustment then I believe the burden of proof should shift to the IRS and they did not present **any evidence** at all in the trial on the schedule C adjustments that was not derived from the petitioner."

[5]In any event, the record demonstrates petitioners' failure to meet the conditions necessary to shift the burden of proof to respondent under sec. 7491. We have already described petitioners' failure to cooperate in the preparation of their case.  Moreover, as explained in the text below, petitioners neither established their compliance with applicable substantiation requirements nor introduced credible evidence to substantiate the deductions in issue.

We understand petitioners to claim that respondent's disallowance of their Schedule C deductions by reason of their failure to provide adequate substantiation represents a "new matter" within the meaning of Rule 142(a) because respondent initially challenged those deductions on the ground that Mr. Weaver did not conduct his music production activity for profit. But the notice of deficiency explains the disallowance of Mr. Weaver's claimed Schedule C deductions on substantiation grounds, and respondent now seeks only that we affirm his disallowance of those deductions on the grounds stated in the notice. Respondent thus has not raised a "new matter" in regard to which he bears the burden of proof under Rule 142(a). See Shea v. Commissioner, 112 T.C. 183, 191 (1999) ("When the Commissioner attempts to rely on a basis that is beyond the scope of the original deficiency determination, the Commissioner must generally assume the burden of proof as to the new matter.").

B.     Substantiation Requirements

In general, section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Because any employee is engaged in the business of earning her pay, expenses related to a taxpayer's employment and not reimbursable by the employer have long been deductible under section 162 and its predecessors. E.g.,

Noland v. Commissioner, 269 F.2d 108, 111 (4th Cir. 1959) ("[E]very person who works for compensation is engaged in the business of earning his pay, and that expense which is essential to the continuance of his employment is deductible under * * * [the predecessor of section 162]."), aff'g T.C. Memo. 1958-60.  When called upon by the Commissioner, a taxpayer must substantiate his expenses.  See, e.g., Park v. Commissioner, T.C. Memo. 2012-279, at *4; see also sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Moreover, some expenses, including those relating to travel, meals and entertainment, passenger automobiles, and computers, are subject to heightened substantiation requirements.  See secs. 274(d), 280F(d)(4)(A)(i), (iv).  In the case of expenses not covered by section 274(d), we may estimate the amounts of allowable deductions when provided with evidence that the taxpayer incurred deductible expenditures.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  To do so, however, we must have some basis on which to make an estimate.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

C.    Unreimbursed Employee Expenses

Because petitioners introduced no evidence at trial to substantiate the deductions they claimed for unreimbursed employee business expenses, we sustain respondent's disallowance of those deductions.

D.      Schedule C Deductions

     1.      Expenses Subject to Section 274(d)

         a.      Applicable Substantiation Requirements

Section 274(d) provides heightened substantiation requirements for deductions or credits for traveling expenses, expenses for gifts, amounts with respect to "listed property", and items "with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with an activity".  To meet those requirements, a taxpayer must

> substantiate[] by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift.

Sec. 274(d).  Thus, a taxpayer can meet the substantiation requirement in either of two ways:  by means of adequate records, or by the taxpayer's own statement, corroborated by "sufficient evidence".  Section 280F(d)(4) defines the term "listed property" to include, among other things, passenger automobiles and computer or peripheral equipment.  Sec. 280F(d)(4)(A)(i), (iv).

The regulations detail how a taxpayer can meet the "adequate records" requirement of section 274(d). See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Those regulations require a taxpayer to maintain "an account book, diary, log, statement of expense, trip sheets, or similar record" in which the taxpayer records an expenditure or use of property "at or near the time of the expenditure or use." Sec. 1.274-5T(c)(2)(i) and (ii), Temporary Income Tax Regs., supra. To meet the requirement of contemporaneous recording, the taxpayer must record "the elements of an expenditure or use * * * at a time when, in relation to the use or making of an expenditure, the taxpayer has full present knowledge of each element of the expenditure or use, such as the amount, time, place, and business purpose of the expenditure and business relationship." Sec. 1.274-5T(c)(2)(ii)(A), Temporary Income Tax Regs., 50 Fed. Reg. 46018 (Nov. 6, 1985).

The regulations also provide guidance on how a taxpayer that does not meet the adequate records requirement can substantiate a claimed deduction by meeting the alternative "sufficient evidence" test. See sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985). To meet that test, the taxpayer must comply with each of the elements required by section 274(d), in regard to an expenditure or use of property, by a combination of the taxpayer's

"own statement, whether written or oral" and "other corroborative evidence".  Sec. 1.274-5T(c)(3)(i)(A) and (B), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).  To establish the amount, time, place, or date of an expenditure or use, the taxpayer's own statement must be corroborated by direct evidence.  Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., supra.  A taxpayer's statement in regard to his business relationship to persons entertained or the business purpose of an expenditure, however, may be corroborated by circumstantial evidence.  Id., 50 Fed. Reg. 46021.

### b. Application of Requirements to Amounts in Issue

#### i. Car and Truck Expenses

Respondent advances several reasons why, in his view, the mileage logs that Mr. Weaver submitted do not meet the adequate records requirement of section 1.274-5T(c)(2), Temporary Income Tax Regs., supra.  For example, he contends that the legend on each log, referring to a date in May 2014, calls into question whether it was prepared at or near the time of the trips it reports.  Respondent also claims that the descriptions the logs provide "do not sufficiently describe the business purpose for the expenditures."  He notes the discrepancy between the business miles reported on each year's log and those reported on Mr. Weaver's Schedule C.

Although Mr. Weaver offered an explanation for the logs' legend, his contradictory testimony regarding how he prepared and maintained the logs does not convince us that he made each entry in the log at or near the time of the reported trip. Moreover, the logs on their face show signs that the data they report are after-the-fact reconstructions. As respondent observes, the descriptions provided for the listed trips tend to be vague and the miles shown tend to be round numbers. Therefore, we agree with respondent that Mr. Weaver's mileage logs do not meet the requirements of section 1.274-5T(c)(2)(i) and (ii), Temporary Income Tax Regs., supra. Mr. Weaver has thus failed to substantiate by adequate records the standard mileage deductions claimed on his Schedules C for 2012 and 2013.

Nor have petitioners satisfied the alternative "sufficient evidence" test. While we might accept Mr. Weaver's mileage logs as his own "written statement" for purposes of that test, petitioners presented no evidence that would corroborate the information set forth on the logs. And they presented no evidence at all to support the deductions they claimed for garage rent, tolls, hourly parking, and interest.

We thus conclude that respondent properly disallowed the deductions claimed for car and truck expenses on Mr. Weaver's Schedules C for 2012 and

2013 because of petitioners' failure to substantiate those deductions in the manner required by section 274(d).

### ii.    Meals and Entertainment

Petitioners include in their proposed findings of fact the observation that "[l]awful for profit business's like * * * [Mr. Weaver's] are allowed to deduct 100% of the expenses paid for food for its employees". We assume that petitioners intended that observation as an argument of law rather than a proposed finding of fact, despite its location in their brief. Nonetheless, if we understand petitioners correctly, they have confused a substantive standard for deductibility with requirements for substantiating deductible expenses. Section 274(a) disallows any deduction for activities "of a type generally considered to constitute entertainment, amusement, or recreation" unless the expense in question was "directly related to" (or, in some cases, "associated with") "the active conduct of the taxpayer's trade or business". Section 274(e)(1) provides that the business nexus standard of section 274(a) does not apply to "[e]xpenses for food and beverages (and facilities used in connection therewith) furnished on the business premises of the taxpayer primarily for his employees." Petitioners have failed to establish that the persons who received the meals for which they claim deductions were Mr. Weaver's employees. Mr. Weaver's Schedules C for the years in issue do

not report the payment of wages. Moreover, petitioners have failed to establish that Mr. Weaver provided the meals for which they claim deductions on his business premises. We thus conclude that, as a substantive matter, the expenses in issue are deductible only if they satisfy the applicable business nexus standard of section 274(a). Moreover, even when applicable, section 274(e)(1) does not provide an exemption from the substantiation rules of section 274(d).

As with Mr. Weaver's mileage logs, respondent argues that his schedule of meals and entertainment expenses does not meet the adequate records requirement of section 1.274-5T(c)(2), Temporary Income Tax Regs., supra. Respondent again views the legend with a May 2014 date as evidence that the schedule "was not made at or near the time of the purported expenditures". He also observes that the schedule does not list the location at which each expenditure was incurred, the expenditure's business purpose, or the business relationship between Mr. Weaver and the attendees.

Mr. Weaver offered no testimony regarding the creation and maintenance of the schedule he submitted to support the claimed meals and entertainment expense deduction for 2012. Given Mr. Weaver's explanation of the legend, we need not view it as evidence that he did not prepare the schedule of meals and entertainment expenses at or near the time of each expenditure. But we have no affirmative

evidence before us that Mr. Weaver prepared and maintained the schedule contemporaneously with the events it lists. Therefore, we agree with respondent that the schedule does not qualify as "an account book, diary, log, statement of expense, trip sheets, or similar record" for purposes of the adequate records test. Moreover, because the schedule is not corroborated by any other evidence, petitioners have not satisfied the alternative "sufficient evidence" test to support the claimed meals and entertainment expense deduction for 2012.

Petitioners presented no evidence at all to support the meals and entertainment expense deduction claimed on Mr. Weaver's 2013 Schedule C. We thus conclude that, as with the reported deductions for car and truck expenses, respondent properly disallowed the deductions claimed for meals and entertainment expenses on Mr. Weaver's Schedules C for 2012 and 2013 because of petitioners' failure to substantiate those deductions in the manner required by section 274(d).

### iii.  Travel

Petitioners provided no substantiation for the deductions for travel expenses reported on Mr. Weaver's Schedules C for 2012 and 2013. Therefore, we sustain respondent's disallowance of those deductions.

### 2.    Other Schedule C Items

#### a.    Contract Labor

Obviously, Mr. Weaver's self-prepared itemization of the amounts included in the deduction for contract labor expense reported on his 2012 Schedule C is not adequate to substantiate that deduction.  For two reasons, we also decline to give any weight to the transaction detail of Mr. Weaver's MilkBoy account.  First, because the record provides no evidence of its provenance, we cannot be confident that it was issued to Mr. Weaver by MilkBoy (rather than, for example, prepared by Mr. Weaver himself).  In addition, the omission from the document of a payment evidenced by one of the charge slips Mr. Weaver submitted calls into question the document's reliability.

We do, however, accept the charge slips themselves as adequate substantiation that Mr. Weaver made payments to MilkBoy.  We might surmise that Mr. Weaver made those payments in pursuit of his music management business.  But without further evidence of their nature, we cannot be sure that the payments were deductible and not capitalizable.[6]  Respondent, however, appears

---

[6]Secs. 263 and 263A generally deny current deductions for amounts that produce benefits beyond the close of the taxable year in which they are paid or incurred.  These capital expenditures must be added to the basis of the property to

(continued...)

to have allowed the deduction of some of Mr. Weaver's payments to MilkBoy,[7] and the record provides no grounds for differentiating between them on the basis of current deductibility. Therefore, we assume that respondent's grounds for disallowing Mr. Weaver's deduction of some of those payments was not that he was required to capitalize them but instead that he failed to substantiate them adequately. On the basis of those charge slips that Mr. Weaver submitted on which both the date and the amount of payment are legible, we conclude that Mr. Weaver substantiated $4,713 of the payments he claims to have made to MilkBoy.

We also accept the invoice from Mirror Image as adequate substantiation that Mr. Weaver paid $599 for graphic design services. Again, respondent made no claim that any portion of Mr. Weaver's claimed deduction for contract labor should be disallowed for reasons other than a failure of substantiation. Cf. RJR Nabisco, Inc. v. Commissioner, T.C. Memo. 1998-252, 1998 WL 376351, at *11,

---

[6](...continued)
which they relate and recovered only as the property is used or when the taxpayer disposes of it.

[7]The record does not indicate the specific payments for which respondent would allow a deduction. Nonetheless, because the difference between the deduction for contract labor costs claimed on Mr. Weaver's 2012 Schedule C and the total payments shown on Mr. Weaver's detailed schedule as having been made to MilkBoy ($7,500 – $6,220 = $1,280) is less than the $5,475 deduction that respondent would allow, it follows that respondent must have allowed a deduction for some of Mr. Weaver's payments to MilkBoy.

*19 (holding that expenditures related to the graphic design of cigarette packaging materials are deductible ordinary business expenses under authorities applicable to advertising expenditures).

We do not view the email from Mr. Volpicelli as adequate substantiation that Mr. Weaver made a deductible payment to the Mastering House. In his email, Mr. Volpicelli indicates the amount of the invoice he attempted to send but provides no description of the nature of that amount or its relation to Mr. Weaver's business. If Mr. Weaver did not receive the invoice Mr. Volpicelli reported having sent, he should have contacted Mr. Volpicelli (as Mr. Volpicelli had requested) and obtained another copy.

Because the amount of the payments Mr. Weaver claims to have made for "contract labor" that we view as having been adequately substantiated is less than the deduction respondent would allow, we will sustain his disallowance of $2,025 of the claimed deduction.

### b. Repairs and Maintenance

The documentation Mr. Weaver submitted in support of the $1,600 deduction claimed on his 2012 Schedule C for repairs and maintenance expenses is insufficient to support that deduction. Petitioners established that Mr. Weaver paid more than $1,600 to Home Depot during 2012 but provided no evidence as to

the nature of those payments or how they related to the business activity reported on his Schedule C. Mr. Weaver's deduction of only two of the three payments to Home Depot shown on his checking account statement suggests that he recognized that he made the third payment for personal reasons. But he has given us no reason to believe that the other two payments were not also personal. The only basis on which we can distinguish the payments is his deduction of two of the three. His claiming a deduction for an amount obviously does not establish its deductibility.

Petitioners presented no substantiation at all for the deduction claimed on Mr. Weaver's 2013 Schedule C for repair and maintenance expenses. Nor have they provided us with grounds to estimate Mr. Weaver's deductible expenses for either of the years in issue. Therefore, we sustain respondent's disallowance of the deductions for repair and maintenance expenses claimed on Mr. Weaver's 2012 and 2013 Schedules C.

### c.    Other Items

Because petitioners have provided no substantiation of the remaining Schedule C items that respondent adjusted and have given us no basis for estimating Mr. Weaver's various expenses, we sustain respondent's adjustments of those items.

II.     Accuracy-Related Penalty

Section 6662(a) and (b)(1) provides for an accuracy-related penalty of 20% of the portion of an underpayment of tax attributable to negligence or disregard of rules and regulations.  Section 6662(a) and (b)(2) provides for the same penalty on the portion of an underpayment of tax attributable to "[a]ny substantial understatement of income tax."  Section 6662(d)(2)(A) generally defines the term "understatement" as the excess of the tax required to be shown on the return over the amount shown on the return as filed.  In the case of an individual, an understatement is "substantial" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  An understatement is reduced, however, by the portion attributable to the treatment of an item for which the taxpayer had "substantial authority" or, in the case of items adequately disclosed, a "reasonable basis".  Sec. 6662(d)(2)(B).  Section 6664(c)(1) provides an exception to the imposition of the section 6662(a) accuracy-related penalty if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith.

The Commissioner bears the burden of production with respect to penalties.  See sec. 7491(c).  To meet that burden, he must produce evidence regarding the appropriateness of imposing the penalty.  Higbee v. Commissioner, 116 T.C. 438,

446 (2001). Once the Commissioner carries his burden of production, the taxpayer bears the burden of proving entitlement to relief because of substantial authority, adequate disclosure, or reasonable cause. See id. at 447.

Respondent, relying on our decision in Swain v. Commissioner, 118 T.C. 358 (2002), argues that petitioners should be treated under Rule 34(b)(4) as having conceded their liability for the accuracy-related penalties he determined. That rule requires taxpayers to include in their petition "[c]lear and concise assignments of each and every error which * * * [they] allege[] to have been committed by the Commissioner in the determination of the deficiency or liability." Rule 34(b)(4) further provides: "Any issue not raised in the assignments of error shall be deemed to be conceded."

We are not convinced that petitioners have conceded their penalty liability. To begin with, while petitioners did not explicitly assign error to respondent's penalty determinations, they did express disagreement with "[e]ach item on the notice of deficiency".

Moreover, even if we viewed petitioners as having failed to assign error to respondent's penalty determinations, we could treat the issue of petitioners' penalty liability as having been tried by the consent of the parties under Rule 41(b)(1). That Rule states: "When issues not raised by the pleadings are tried by express or

implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

We relied on Rule 41(b) in El v. Commissioner, 144 T.C. 140, 149 (2015), to reject the Commissioner's argument that the taxpayer's failure to assign error to the additions to tax he had determined resulted in the taxpayer's concession of that issue. We noted that respondent's answer and pretrial memorandum in that case both identified the additions to tax as an issue. We thus concluded that, when the parties submitted the case for decision without trial under Rule 122, they "submitted the issue of * * * [the taxpayer's] liability for the additions to tax for decision * * * by implied consent." El v. Commissioner, 144 T.C. at 149. We distinguished our prior Opinion in Swain on the ground that the parties in that case "did not try or submit the case by implied consent." Id.

Respondent attempts to distinguish El on the ground that his pretrial memoranda in the present case allege that petitioners had not assigned error to his penalty determinations and that, consequently, they should be treated as having conceded their liability for penalties. But those same memoranda identified petitioners' liability for penalties as one of the issues presented in the case. Moreover, at trial, respondent presented evidence that was relevant only to the penalty issues.

Even if petitioners did not concede their liability for penalties, however, we would sustain respondent's determinations. By upholding in full the $9,010 deficiency respondent determined for petitioners' 2012 taxable year, we confirm that, as stated in respondent's notice of deficiency, petitioners were required to show a tax of $24,486 on their return (that is, $9,010 more than the $15,476 they reported on their amended return). Similarly, by upholding in full the $6,370 deficiency that respondent determined for petitioners' 2013 taxable year, we confirm that petitioners were required to report a tax for that year of $15,351 ($6,370 more than the $8,981 they reported). For each year, 10% of the tax petitioners were required to show on their return is less than $5,000, so that the latter amount serves as threshold for determining whether petitioners' reported tax reflected a substantial understatement. And, for each year, the excess of the tax petitioners were required to show on their return over the amount they did report exceeds the applicable threshold. Therefore, respondent has met his burden of production to establish the appropriateness of a substantial understatement penalty under section 6662(a) and (b)(2) for each year. Petitioners make no argument that they had substantial authority for their errors in reporting or that they had

reasonable cause for those errors and acted in good faith regarding them.[8]

Therefore, we sustain respondent's determination that petitioners are liable for accuracy-related penalties of $1,802 and $1,274 for their 2012 and 2013 taxable years, respectively.  For the reasons explained above,

Decision will be entered for

respondent.

---

[8]Because petitioners have failed to substantiate and keep adequate books and records with respect to the items respondent adjusted, the exception from the substantial understatement penalty for items adequately disclosed and supported by a reasonable basis is not available to them.  See sec. 1.6662-4(e)(2)(iii), Income Tax Regs.